(98 App. Div. 101)

RIGLANDER v. STAR CO.

(Supreme Court, Appellate Division, First Department. November 25, 1904.)

1. CONSTITUTIONAL LAW—INFRINGEMENT ON JUDICIARY—PREFERRED CASES—REGULATION OF TRIAL.

    Code Civ. Proc. § 793, as amended by Laws 1904, p. 311, c. 173, provides that in certain counties and in the Seventh Judicial District an application for preference shall be made to the court as prescribed in the rules of practice, and, if the case is entitled to preference, and is intended to be moved for trial at or for the term for which the application

is made, the court or judge "must designate a day during that term. on which day the cause shall be heard, and, if there be two or more causes so designated for the same day, the said causes shall be heard in the order of their date of issue." *Held*, that the section as so amended was unconstitutional, as depriving the judiciary of the right to regulate the hearing of preferred causes according to the circumstances of each particular case.

2. SAME—DUE PROCESS OF LAW.

Such section was also invalid in compelling the trial of cases on the day named, as tending to deprive litigants of their property without due process of law.

Laughlin, J., dissenting.

Appeal from Trial Term, New York County.

Action by Mabel Riglander against the Star Company. From an order granting a preference and setting the case for trial on a day certain in the October, 1904, term, defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

David B. Hill, for appellant.

Joseph J. Cunningham, for respondent.

VAN BRUNT, P. J. In approaching the consideration of the questions which are involved in this appeal, it is first of all necessary to determine what the Legislature intended by the amendments to the laws regulating preference in civil actions which it enacted during the last session, as the legislative intention must always be sought after, and must control in the interpretation of statutes. In determining this question we must look at the provisions of the Code of Civil Procedure regarding preferences as they then stood, and the interpretation that had been put upon them by the courts at the time of the legislation in question. By section 791 of the Code of Civil Procedure the Legislature had provided that civil causes should be entitled to preferences among themselves in the trial or hearing thereof in the following order. Then follows a long list of causes, among which appear actions for libel or slander. Section 793 then provided for the procedure by which the preference awarded by section 791 was to be obtained. In the counties of New York, Kings, Queens, and Erie, and in the Seventh Judicial District, the application for a preference was required to be made "at the opening of the court, or to such justice or other term of court, or at such other time as shall be prescribed by the general or special rules of practice, and if it shall appear that the cause is entitled to a preference, and is intended to be moved for trial at or for the term for which the application is made, the court or justice may direct that it shall be so heard." Under these provisions the courts had held that it was discretionary with them, when an application for a preference was made, whether to allow the same or not, dependent upon the conditions of the particular case and of the other cases which were entitled to their attention. This being the condition of the law, the Legislature at its last session amended the last paragraph of section 793 of the Code of Civil Procedure, to read as follows:

"In said counties of New York, Kings, Queens and Erie and in the Seventh Judicial District, the application for a preference shall be made at the open-

ing of the court, or to such justices of other term of court, or at such other time as shall be prescribed by the general or special rules of practice and if it shall appear that the cause is entitled to a preference and is intended to be moved for trial at or for the term for which the application is made, the court or judge must designate a day, during that term on which day the said cause shall then be heard; if there be two or more causes so designated for trial for the same day, the said causes shall be heard in the order of their date of issue."

Under the law as it stood before the last amendment, as has been said, the courts were allowed some discretion in the matter. They could see that no injustice was done in the giving of the preference provided for by the statute, as it was their duty to do. The provisions upon which the courts had based their right to exercise this discretion were by the amendment of the last session of the Legislature stricken from the statutes, and they have been replaced by words of the most mandatory character. By this change in the statute it would seem to have been without doubt the intention of the Legislature to take away the right to exercise any discretion, because it commands the court to set the case down for trial on a day certain in the term for which it is moved, and to try the case on that day. The mandate of the Legislature is to try at that term and upon that day. It says to the court: "You are to have no discretion, no matter what may be the condition of either of the parties as to their evidence, or ability to get ready for trial. If the other party desires a trial at that term, he is entitled to have it, and you must hear the case on that day." This intention is emphasized by the provisions for the only excuse permissible under the statute for not trying the case upon the set down day, viz., that there is another preferred case set down for that day of an older issue. If this legislation does not mean this, what can it mean? The statute before its amendment gave the courts discretion. If it was not intended to take away all discretion, why was the statute amended by striking out all words allowing discretion, and inserting language of the most mandatory kind? No other conclusion can be arrived at than that the Legislature intended to take away all right of the court to exercise discretion in these matters.

The question, then, is presented: Has the Legislature the authority to strip the courts of all those discretionary powers that they have exercised ever since their organization? And is a judgment obtained by such a procedure, in which a party may be deprived of all opportunity to prepare for trial and afforded no opportunity to avail himself of the usual and ordinary means of getting his evidence before the court, a judgment obtained by due process of law? It is undoubtedly true that under the Constitution the Legislature has the power to alter and regulate the proceeding in law and equity which it has heretofore exercised; but it has never before attempted to compel the courts to give a hearing to a particular suitor, to the absolute exclusion of others who have an equal claim upon its attention. One of the powers which has always been recognized as inherent in courts, which are protected in their existence, their powers, and jurisdiction by constitutional provisions, has been the right to control its order of business, and to so conduct the same that the rights of all suitors before them may be safeguarded. This power has been recognized as judicial in its nature,

and as being a necessary appendage to a court organized to enforce rights and redress wrongs. That a mere ministerial duty cannot be imposed upon a court has long been recognized as inconsistent with its judicial functions, for the exercise of which alone under our system of government are courts organized; the ministerial and executive and legislative functions being lodged in other and independent branches of the government. It is claimed in the case at bar that the Legislature, in providing that the court shall put the case down for trial on a day certain in the term for which it is moved, and try the case on that day, is compelling the court to perform a ministerial act, depriving it of all discretion as to the day of trial. Upon the other hand, it is contended that the court has the judicial function to perform of determining whether the case is entitled to a preference under the statute, and that it is only when it has performed this judicial act that it must "designate," etc. This is undoubtedly true so far as determining the question of preference is concerned. But there are further judicial functions which have always heretofore been exercised by the courts in connection with the fixing of days for the trial of causes pending before them and the commencement of such trials, namely, whether it would be just to the parties to compel a trial at the time asked for. In determining this question the courts have always exercised their judicial discretion, and the want of its exercise in favor of postponement in a proper case has been held to be error upon appeal. It certainly cannot be that the Legislature can say that the court shall be justified in compelling A. to go to trial under exactly the same circumstances wherein it would be error to compel B. to go to trial. And yet this is what this act commands the court to do.

It seems to me that no one can read the amendatory law, having in mind, as he is bound to do, the previous condition of the law upon the subject, without having the conclusion forced upon him that the Legislature intended to deprive the courts of all discretion, and to compel them to try these cases at the term for which they are moved, thus depriving the courts of the right to exercise that judicial discretion which has always been their prerogative. I do not think that the Legislature can do this. The courts are not the puppets of the Legislature. They are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions. And, while the Legislature has the power to alter and regulate the proceedings in law and equity, it can only exercise such power in that respect as it has heretofore exercised; and it has never before attempted to deprive the courts of that judicial discretion which they have been always accustomed to exercise.

There is another view that may be taken of this extraordinary provision which is equally fatal to its constitutionality. Under this law, may not a party be deprived of life, liberty, or property without due process of law? "In discussing the constitutionality of this act, it is to be remembered that the question is to be determined not by what has been done under it in any particular instance, but what may be done under and by virtue of its authority. Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Gilman v. Tucker, 128 N. Y. 190–200, 28 N. E. 1040, 13 L. R. A. 304, 26 Am. St. Rep. 464." Colon v. Lisk, 153 N. Y. 194, 47

N. E. 303, 60 Am. St. Rep. 609. "It is difficult to define with precision the exact meaning and scope of the phrase 'due process of law.' Any definition which could be given would probably fail to comprehend all the cases to which it would apply. It is probably wiser, as recently stated by Mr. Justice Miller, of the United States Supreme Court, to leave the meaning to be evolved 'by the gradual process of judicial inclusion and exclusion as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' Davidson v. Board of Administrators of New Orleans, 17 Alb. Law J. 223. It may, however, be stated generally that due process of law requires an orderly proceeding adapted to the nature of the case, in which the citizen has an opportunity to be heard, and to defend, enforce, and protect his rights. A hearing or an opportunity to be heard is absolutely essential. We cannot conceive of due process of law without this." Earl, J., in Stuart v. Palmer, 74 N. Y. 191, 30 Am. Rep. 289. The provisions of the act in question require that, the right to a preference and the intention to try at the term for which the application is made being shown, the court or justice must designate a day certain during that term, on which day the justice holding the court must try the cause, no matter whether the party moved against is ready for trial or not, no matter whether he has used due diligence to get ready or not, no matter whether his witnesses are sick or temporarily absent from the state or not, no matter whether his witnesses may reside in foreign countries and he has had no opportunity to take their evidence upon commission in the usual way or not. The court is commanded to set the cause down for a day certain, and try it on that day. Can it be said that the court would not be justified under this law in going on with the trial under such circumstances? Clearly not. It is commanded so to do; and it has never yet been held to be error to obey the plain mandate of a constitutional law. On the contrary, it would be error if it did not follow it. Can a judgment obtained under such circumstances be said to be obtained by due process of law? It seems to me clear that it cannot.

In the case of the People ex rel. Witherbee v. Supervisors, 70 N. Y. 234, due process of law is defined as follows:

"Due process of law requires that a party shall be properly brought into court, and that he shall have an opportunity, when there, to prove any fact which, according to the Constitution and the usages of the common law, would be a protection to him or his property."

He is not only to be brought into court, but must have an opportunity to present his evidence. If he is not allowed sufficient time to prepare his evidence, according to the usual means of obtaining evidence for use in courts of justice, his so-called day in court is only a snare and a delusion. He is deprived of a right which is not only accorded to other suitors, but which it would be error to refuse them. This cannot be due process of law. The process of the law includes every step from summons to judgment, and if a party is deprived of any right usually accorded to others it is not due process of law.

The United States Supreme Court discussed quite at large the question as to what is due process of law in the case of Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215. In that case it was held that it was not within the power of the Supreme Court of the District of Co-

lumbia to order the answer of the defendant in a chancery suit pending in that court to be stricken from the files, and a decree to be entered that the bill be taken pro confesso against him, simply because he was held to be guilty of contempt in neglecting to pay into court money held by him which was the subject of controversy in the suit, and declined to appear when summoned to do so. The learned judge writing the opinion of the court in the case cited truly says:

"At common law no man was condemned without being afforded opportunity to be heard. Thus Coke (2 Inst. p. 46), in commenting on the 29th chapter of Magna Charta, says: 'No man shall be disseised, etc., unless it be by the lawful judgment; that is, verdict of his equals (that is, of men of his own condition), or by the law of the land (that is, to speak it once for all), by the due course and process of law.' "

He calls attention to the definition of Judge Cooley in his Constitutional Limitations, which was approved by the court in Ex parte Wall, 107 U. S. 265–289, 2 Sup. Ct. 590, 27 L. Ed. 552:

"Perhaps no definition is more often quoted than that given by Mr. Webster in the Dartmouth College Case: 'By the law of the land is most clearly intended the general law; a law which hears before it condemns, which proceeds upon inquiry, and renders judgment only after trial. The meaning is that every citizen shall hold his life, liberty, property, and immunities under the protection of the general rules which govern society.' "

In the case of Galpin v. Page, 18 Wall. 350, 21 L. Ed. 959, the same court said:

"It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

It is thus seen that the rule which runs through all these cases is that not only shall a party be brought into court, but, after he is brought into court, he shall have an adequate opportunity to be heard according to the general rules prevailing in courts of justice. L. & N. R. Co. v. Schmidt, 177 U. S. 230, 20 Sup. Ct. 620, 44 L. Ed. 747. In other words, that he shall have an opportunity to prepare his case for trial, to produce witnesses, and to be heard in court by his witnesses, in the same manner and under the same conditions as suitors generally before the court.

It is no answer to this proposition to say that the Legislature has provided a procedure, and that, as it has the power under the Constitution to regulate procedure, it has only acted within its constitutional limitations. The courts have said, in enforcing the protection guarantied by the Constitution when sought to be invaded by the Legislature, that:

"The Legislature is not vested with the power to provide that any procedure that it chooses to declare such shall be regarded as due process of law. If it possessed that power, the guaranties of the Constitution would be rendered unavailing, and private rights of citizens would be under its absolute control." Colon v. Lisk, 153 N. Y. 195, 47 N. E. 304, 60 Am. St. Rep. 609.

It being clear that every party is entitled to the same opportunity to procure and present his evidence upon the trial that usually obtains in courts of justice, and that this amendment to the statute requires the

court to act in such a way that it may deprive him of that right, it seems to be manifest that the amendment is unconstitutional, as allowing a party to be deprived of life, liberty, or property without due process of law. It is what may be done, not what has been done, that determines the constitutionality of an act of the Legislature.

The order should be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs.

PATTERSON, O'BRIEN, and HATCH, JJ., concur.

LAUGHLIN, J. (dissenting). The order was made pursuant to the provisions of section 793 of the Code of Civil Procedure, as amended by chapter 173, p. 311, of the Laws of 1904. The learned counsel for the appellant challenges the constitutionality of this amendment upon the ground that the Legislature has peremptorily directed the court to set preferred causes down for days certain, and has deprived the court of any authority to postpone the trial for cause shown. The section, prior to the amendment, provided that in the county of New York, and certain other counties, an application for a preference given by section 791 should be made to the court or to a justice, as might be prescribed by the rules of practice, and provided that, "if it shall appear that the cause is entitled to a preference, and is intended to be moved for trial at or for the term for which the application was made, the court or justice may direct that it shall be so heard." In Morse v. Press Pub. Co., 71 App. Div. 352, 75 N. Y. Supp. 976, this court held that the preference was not given absolutely by section 791, but that the court on an application for an order to give effect to the preference, was at liberty to exercise its discretion and refuse to grant the order, even though the facts were undisputed, and the case belonged to one of the classes preferred by virtue of section 791, was properly upon the calendar, and the motion was regularly made; and further held that no case would be allowed a preference unless some special facts or circumstances, in addition to those prescribed by the statute, were presented calling upon the court to exercise its discretion favorably. I believed then, and am still of the same view, that the effect of that decision was to nullify the preference which the Legislature intended to give the trial of certain classes of litigation, and I gave expression to my views in a dissenting opinion. The Legislature, as I read its intention, decreed the preferences absolutely; but for the convenience of court and counsel and orderly administration of justice in making large calendars, instead of leaving the right to a preference to be merely stated in a note of issue and acted upon, without discretion, by the clerk, required a special application to the court, showing the right to the preference and the election therefor. The correctness of that decision could not be reviewed by the Court of Appeals without the consent of the Appellate Division, and it is not entirely clear that it would have been reviewed on the merits even with such consent. If the decision in the present case was not in accord with the will of the people with reference to the law of preferences in the trial of causes, there was, therefore, no remedy except through a further enactment by the Legislature. It was the general opinion of the bar, I think, that the authority to determine both

the method of procedure and preference in the trial of different classes of litigation was vested in the Legislature, and not in the courts. Such is the evident meaning of section 3 of article 6 of the Constitution, which provides: "Except as herein otherwise provided, the Legislature shall have the power to allow and regulate the jurisdiction and proceedings in law and in equity, that it has heretofore exercised," and it has been so construed by the courts. Howard v. Moot, 64 N. Y. 262; Hayes v. Consolidated Gas Co., 143 N. Y. 641, 37 N. E. 648. The Legislature, therefore, I think, in the exercise of authority with which it, and not the courts, was vested, and with a view to declaring that a preference should be given to the trial of certain classes of causes without requiring any fact to be shown other than they belonged to that class of causes, enacted the amendment which it is claimed is unconstitutional. The amendment modified the last sentence of the section by changing the word "may" to "must," and adding thereto as follows: "The court or justice must designate a day certain during that term, on which day the said cause shall then be heard; if there be two or more causes so designated for trial for the same day, such causes shall be heard in the order of the date of issue." I am of opinion that the Legislature did not intend to trespass upon the functions of the judiciary, but intended merely to nullify the effect of the judicial trespass upon the provisions of the Legislature. The object of the amendment was to render effectual the preferences given by the Legislature in the exercise of its constitutional right. The amendment, viewed in the light of the preceding decision, is susceptible of this construction if it does not require it, and, that being so, under the well-settled rule of construction the amendment should be given this effect, and should not be declared unconstitutional. There was no intention to deprive the court of authority to put a case over the term, or otherwise postpone the trial for cause shown. The Legislature merely meant to provide that, when it is shown to the court that the case is one of the class entitled to a preference under section 791, it must be accorded a preference, and, in order that the courts might not, through regarding these preferences with disfavor or otherwise, fail to give the preference, it directed that they should be set for trial for a day certain. That, however, was intended to regulate their status with reference to the other causes upon the calendar, and not to make it mandatory upon the court to set them down, even though one of the parties might not be able to prepare for trial, or to compel their trial at all hazards on the day for which they are set down. The statute can be given the effect intended by the Legislature without interfering with the judicial discretion to put the case over the term, or to postpone the trial for cause shown either at the time the motion for a preference is made or when the cause is called for trial on the day to which it is set down. In the case at bar it was not shown that the defendant could not be ready for trial on any day during the term, and no cause for putting the case over the term or postponing the trial was shown.

I am therefore of opinion that the order should be affirmed.