EX PARTE, E. N. SMITH, Petitioner, v. FRED RICHARDSON, Sheriff, etc., Respondent.

Kansas City Court of Appeals. January 9, 1922.

1. **DEPOSITIONS: Notary Public: Contempt: Jurisdiction of Notary to Commit Witness for Refusal to Answer Questions: Commitment of Witness Should be Only Until Such Time as Witness Answers Questions Propounded.** Where a witness whose deposition was being taken before a Notary refused to answer certain questions propounded to him, and thereupon, for such refusal to answer, the Notary issued an order of commitment adjudging the witness to be in wilful contempt of court and thereby ordered him committed to jail "Until the further order of the court or until he be otherwise discharged by due process of law," it is *held*, that the commitment of the witness was an act without the jurisdiction of the Notary and fatally defective, the jurisdiction of the Notary under section 5428, Revised Statutes 1919, which outlines the procedure under which witnesses may be committed for refusal to answer questions, being limited to committing the witness to jail until he answers the questions.

2. **HABEAS CORPUS: Person Imprisoned by Virtue of Commitment in Excess of Jurisdiction of Court can be Discharged by Writ of Habeas Corpus.** One imprisoned by virtue of a commitment in excess of the jurisdiction of the court rendering it can be discharged by writ of *habeas corpus*.

3. ———: **Constitutional Law: Irregularity of Judgment and Commitment: Due Process: On Application for Writ of Habeas Corpus Court has Only to Determine Whether Judgment and Writ of Commitment are Regular upon Their Faces, and if Any Irregularity Appears the Prisoner Must be Discharged.** On considering an application for writ of *habeas corpus* the court has only to determine whether the judgment and writ of commitment are regular upon their faces, and if any irregularity appears the prisoner must be discharged as required by section 30, article II, of the Constitution of Missouri, and section 1, Fourteenth Amendment to the Constitution of the United States, under which such rights to due process are secured.

## Habeas Corpus.

PETITIONER DISCHARGED.

*Frank M. Lowe* for petitioner.

*I. N. Watson, O. H. Dean* and *R. R. Brewster* for respondent.

ARNOLD, J.—The petitioner, E. N. Smith, presented his application for a writ of *habeas corpus* to this court, alleging that he is unlawfully imprisoned and restrained of his liberty by the sheriff of Jackson County. The writ was granted, as prayed, and made returnable to this court during the October Term thereof, to-wit on December 6, 1921. In due time the sheriff made return, whereupon the petitioner filed a reply.

The facts shown by the record are as follows: On November 19, 1921, Frank C. Seested, circulation manager of the Kansas City Star, a newspaper published in Kansas City, Missouri, brought suit in the circuit court of said county against the Post Printing and Publishing Company, owner of the Kansas City Post, a newspaper also published in said city and county, to recover $100,000 actual and $100,000 punitive damages by reason of an article published in said Kansas City Post on November 2, 1921, in which it was stated that said Frank C. Seested contributed $11,000 to the imperial German government. The alleged libelous article so published and upon which said action is based is as follows:

"The Post feels that it would be remiss in its duties if it did not again call attention, now that the great American Legion convention is closing, to the pro-German record of August Frederick Seested, general manager of the Kansas City Star, in the front yard of which the reviewing stand for the Legion's distinguished visitor was erected.

"The Post has told how Seested lived in this country 40 years and never deemed it necessary to become naturalized until he was threatened with internment and his property was in danger of being seized by the alien enemy property custodian after we entered the war.

"It now desires to complete the case against Seested by reproducing records of Seested's contributions to the kaiser's war chest, which are on file in the government archives at Washington.

"These records show that Seested contributed at least $26,000, and that his brother Frank Seested, circulation manager of the Star, also gave to the imperial German government $11,000.

"This information which has been in our possession since last week, was obtained when the department of justice, the intelligence department of the army, and the American Protective League seized the papers of those arch conspirators, Von Papen, Von Bernstorff and Von Igel, when they were trying to embroil us with Mexico and were conducting a campaign of destruction in our munition plants.

"One entry in the records of the heads of the German and propaganda organization in this country deals with the $26,000 contributed by August Frederick Seested and another with the $11,000 contribution of his brother.

"The entry concerning August Frederick Seested obtained and copied, reads:

Seested, August F., general manager. Kansas City Star, $26,000.

Data Sep. Pymnts,

Md vi vb vppn,

"Government investigators interpreted the entry to mean that Seested, had contributed $26,000, and that the payment for September, year not given, had been made to Von Bernstorff, Von Papen and Von Igel, the initials being interpreted as follows:

Md—Made

vi—Von Igel

vb—Von Bernstorff

vppn—Von Papen

"The entry concerning Frank Seested is the same except for the amount.

"How did it happen that Kansas City permitted the reviewing stand to be erected at the Star, and Marshal Foch and General Pershing to be housed at the home of the Star's owner?

"The Post can only explain that Kansas City knew nothing about it until the last minute—that the plans were made secretly through the connivance of the local convention committee's chairman and kept secret until one week ago, and until after the reviewing stand was partly built.

"Why did not the Post give out the damning indictment against Seested during the convention? Plainly and bluntly, because we were unwilling to ruin the convention, prevent the parade, and perhaps incite a riot. Anybody who knows the legion knows its explosive character."

On the same day on which the summons was issued a notice to take depositions was given by plaintiff, and on November 23, 1921, in answer to said notice and in obedience to a subpoena, the petitioner herein, the managing editor of said Kansas City Post, appeared before a notary public in the office of I. N. Watson, of counsel for plaintiff.

During the taking of his deposition, the said witness was asked:

"Where did you get your information on which that article was based?

Also various statements in the article alleged to be libelous were read to the witness and as to each he was asked where, and from whom, he obtained that information. The witness refused to answer and, as a reason for such refusal, stated that he had written the article complained of, and had caused it to be printed in the newspaper and having admitted these facts, he, upon the advise of counsel for defendant, refused to furnish the name of the party from whom the information was obtained, and upon said refusal, the notary public made the following statement:

"You understand that under this subpoena, I have authority to commit you to jail until the matter can be brought before the Circuit Court of Jackson County, Missouri, and be determined by a judge thereof, as to whether you should answer the question or not."

The witness persisted in his refusal to answer, and thereupon the notary issued an order of commitment, wherein certain facts are recited and the questions propounded which the witness refused to answer are set forth and further the commitment reads as follows:

"WHEREFORE the undersigned, as a notary public of Jackson County, Missouri, doth, by reason of the premises aforesaid adjudge that the said E. N. Smith is in wilful contempt of the court and that the said E. N. Smith be adjudged guilty of contempt of court and ordered committed to the County Jail of Jackson County, Missouri, until he shall answer such questions or until he shall otherwise be discharged by due course of law.

"This is therefore to command you, Fred A. Richardson, Sheriff of Jackson County, Missouri, forthwith to have and deliver into the custody of the keeper of the county jail of said Jackson County, Missouri, the body of said E. N. Smith so as aforesaid found guilty of contempt, to be imprisoned therefor in the county jail until further order of the court or until he be otherwise discharged by due process of law, and you, the said keeper of said jail, are hereby required to receive the said E. N. Smith into your custody and there confine

Ex parte Smith v. Richardson.

him in the jail of said county until the further order of the court or until he shall be otherwise legally discharged by due process of law and for so doing this shall be your warrant.

"Witness my hand and notarial seal affixed hereto this 23rd day of November, A. D. 1921.

"My commission expires April 4, 1925.

(SEAL).

Notary Public, Jackson County, Mo."
"ANNA M. FELTENSTEIN,

The petitioner urges that he should be discharged for two reasons: First. There is no valid comitment in this case upon which he can be lawfully held. Second. That under the law, having admitted the publication of the alleged libelous article, he as an employee of the defendant company cannot be imprisoned for refusing to furnish the name of the party from whom the information was obtained upon which the alleged libelous article was based.

In support of point No. 1, counsel for petitioner contends that the commitment is void because it directs that the witness be committed to jail "until the further order of the court, or until he shall otherwise be discharged by due course of law."

It may be conceded, we think that under the law of this State, the jurisdiction of the notary is limited to the committing of the witness to jail until he answers the questions; and that the only person or power that could have discharged, or released, this witness is the circuit court, and that under the situation as presented in this record, the circuit court would have no right to make any order releasing the witness except upon some separate, independent and direct proceeding brought in his behalf to obtain his release. It must be held, therefore, that a commitment of a witness for contempt by a notary public "until the further order of the court, or until he shall otherwise be discharged by due course of law" is an act without his jurisdiction and is fatally defective.

It is well settled in this State that one imprisoned by virtue of a commitment in excess of the jurisdiction of the court rendering it can be discharged by writ of habeas corpus. [In re Shull, 221 Mo. 623.] Section 5428, Revised Statutes 1919, outlines the procedure under which witnesses may be committed for refusal to answer questions: "A person summoned as a witness and attending, who shall refuse to give evidence which may lawfully be required to be given by such person, on oath or affirmation, may be committed to prison by the court, or other person authorized to take his deposition or testimony, there to remain without bail, until he gives such evidence." [R. S. 1909, sec. 6372.]

It is clearly seen, therefore, that this section limits the imprisonment to such time as "the witness shall give such testimony." He may purge himself of contempt by giving such testimony.

The writ of habeas corpus has a peculiar sanctity which is constitutional and goes to the very foundation of human right to liberty, and the courts always have required the strictest construction of the law and the facts appertaining to its operation. And in considering an application for a writ of habeas corpus the court has only to determine whether the judgment and writ of commitment are regular upon their faces. If any irregularity appears, then the prisoner must be discharged. Under our Constitution human liberty is too sacred to require less than the strictest construction before one may legally be deprived of his liberty.

Section 30, article 2, of the Constitution of Missouri provides, "That no person shall be deprived of life, liberty or property without due process of law."

Section 1, Fourteenth Amendment of the Constitution of the United States, declares: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any State deprive any person of life, liberty or property without due process of law."

It is held in Riglander v. Star Co., 90 N. Y. Supp. 772, 776, 98 App. Div. 1: "The process of the law in-

cludes every step from summons to judgment, and if a party is deprived of any right usually accorded to others it is not due process of law.''

In Ex Parte Nelson, 251 Mo. l. c. 104, our Supreme Court said:

''The authorities are uniform in holding that these constitutional provisions are applicable to every form of procedure where the life, liberty or property of a person is sought to be taken from him, whether it be by the trial or appellate court, sitting alone or aided by a jury, upon information, indictment, citation or appeal, charged with a misdemeanor, felony, contempt of court, inferior or superior, or with any other violation of the law, where a judgment or conviction is asked taking from him his life, liberty, or property.''

Counsel for plaintiff argue that the judgment of the committing magistrate controls and when that is good, the commitment is good. We cannot sanction this reasoning. [Ex Parte Creasy, 243 Mo. 679, et seq., and cases therein cited.]

We hold, therefore, under the facts and the law as above construed, the commitment in the case at bar is fatally defective and that the prisoner must be discharged.

Counsel for petitioner urges that his second point also be determined, to-wit, that the witness, having admitted the authorship of the article alleged, he, as an employee of defendant company, cannot be imprisoned for refusing to furnish the name of the party from whom the information was obtained, as such information is not material to any issue in the case.

The primary object in invoking the writ of *habeas corpus* is to secure the release of an imprisoned party. Having decided that the prisoner is entitled to his release, we do not deem it advisable to determine at this time the second point. Without, therefore, judicially deciding the point, it may not be improper to observe that there has been no answer filed in the libel suit, and the issues are not yet made up. Until this is done, in

determining this point, the court would be required to enter more or less into the realm of speculation as to what the answer of defendant may contain as a defense, and its bearing on the question in issue.

It is the law that there are, at least, two things that may be pleaded, to-wit, the truth of the alleged libelous article, and mitigation. If only the former is pleaded, the questions propounded to the witness and his refusal to answer, which resulted in his being adjudged guilty of contempt, may or may not be material to the issues. However, punitive damages are asked and if mitigation is invoked as a defense (as readily might be apprehended would be the case), we can readily see that the questions might become vastly material.

Holding, as we do, however, that the commitment is fatally defective, we rule that the petitioner should be discharged from custody.

It is so ordered. All concur.