Chief Judge Fuld.
In the two cases before us, the defendants-respondents challenge the constitutionality of CPLR 3216, as enacted in 1967 (L. 1967, ch. 770, eff. Sept. 1, 1967), on the ground that the legislation deprived the court of its inherent power to control or regulate its own calendar. The new statute provides, among other things, that a defendant, before moving to dismiss the complaint for failure or neglect to prosecute the action, must serve upon the plaintiff ‘ ‘ a written demand ** * requiring [him] * * * to serve and file a note of issue within forty-five days after receipt of such demand ’.[1] *242 The precise question presented is rather narrow, dealing with the validity of this single provision of the CPLR, but involved are highly significant considerations concerning the constitutional limits on the power of the Legislature to prescribe procedural rules for the courts.
Before considering the constitutional question, we turn briefly to the facts of the cases before us.
Cohn v. Borchard Affiliations.
This is a negligence action, brought by Mrs. Viola Cohn and her husband, for personal injuries and mental anguish which she allegedly suffered when, on March 23,1961, she was trapped in an elevator in a building owned by the defendants. The suit was commenced in February, 1964, and, following the defendant’s service of his answer — accompanied by a demand for a bill of particulars—no further activity occurred until March 29, 1967. On that date, the defendant moved for an order dismissing the complaint “ for the plaintiffs’ general neglect in diligently prosecuting this action”. The motion, adjourned several times, was submitted for decision on September 1, 1967, the day on which new rule 3216 went into effect. Mr. Justice Fine, to whom the motion was submitted, denied it *243 about two weeks later, noting that the defendant had not served the 45-day demand as the statute required.[2]
On appeal, however, a closely divided Appellate Division reversed the resulting order and directed that the motion be granted and the complaint dismissed (30 A D 2d 74). Holding that the newly enacted rule was unconstitutional, the Appellate Division declared that a court has inherent and constitutionally protected power to dismiss a complaint for failure to prosecute and that the effect of the new provision was to “ emasculate ” this power by giving the plaintiff the absolute right to place Ms ease on the calendar before such a dismissal could be considered (30 A D 2d, at p. 77). Justice Stevens, in a dissent in wMeh Justice Timer joined, argued that the demand provision merely gave plaintiffs a measure of protection against the neglect or default on the part of their attorneys and did not “ unduly hamper the courts ” (30 A D 2d, at p. 78). The plaintiffs have appealed to us as of right.
Blankenship, Gruneau & Ostberg, Inc. v. NTA Telestudios, Ltd.
The complaint in this case alleges that the defendant, NTA Telestudios, in violation of a contract with the plaintiff, appropriated for its own use a method which the plaintiff had developed for measuring audience reaction to television broadcasts. The action was commenced in August of 1960, bills of particulars were submitted and several motions were litigated by each party. In September of 1964, the plaintiff served a notice to take a deposition wMch, upon mutual consent of the parties, was adjourned sine die. No further action was thereafter taken by the plaintiff until May of 1968, when an attempt was made to reschedule *244 the long-delayed deposition. The defendant opposed the step and responded with the present motion to dismiss for failure to prosecute. In its motion papers, the defendant indicated that it had not 'Considered it necessary to comply with the 45-day notice requirement of CPLR 3216 in light of the Appellate Division’s decision in the Cohn case, which had been handed down a short time before.
The court at Special Term (Dickens, J.) granted the motion, noting that the “ inordinate delay of over four years * * * is inexcusable.” Since the court and the parties felt themselves concluded by the earlier decision of the Appellate Division in Cohn, there was no discussion of the constitutionality of the CPLR provision and on appeal it was unanimously affirmed without opinion. In this instance, the appeal has been taken by leave of our court.

Constitutionality of CPLR 3216

When the CPLR was first enacted, rule 3216 consisted, in its entirety, of the general language, now contained in its subdivision (a), authorizing courts to dismiss a pleading “ [w]here a party unreasonably neglects to proceed ’ ’. This was but a re-enactment of a similar provision contained in the superseded Civil Practice Act (§ 181). In December of 1963, shortly after the CPLR went into effect, however, the Appellate Division for the First Department handed down its decision in Sortino v. Fisher (20 A D 2d 25). The court in that case adopted the view that the principal function of the motion to dismiss was to reduce congestion on court calendars. Starting with the premise that “ it is almost invariably true that neglected actions are of little or no merit ” (20 A D 2d, at p. 28), the court proceeded to delineate a set of standards designed to insure that any case which had been delayed an unreasonable length of time would be dismissed unless (1) the action was shown to have substantial merit and (2) an acceptable excuse was presented for the neglect in placing it on the calendar. By enumerating the limited excuses for delay which would be considered acceptable, the court introduced, for the first time, fixed rules to govern what had previously been an “ almost purely discretionary area of procedural law ’ ’. (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3216.04.)
*245 Shortly after the Sortino case was decided, the Legislature amended the statute so as to lessen its impact (L. 1964, ch. 974:). In its modified form, it provided that a motion to dismiss could not be brought until six months after the joinder of issue and, when the motion was “ based upon the failure of the plaintiff to serve and file a note of issue ’ ’, it had to be preceded by service of a 45-day demand upon the plaintiff that he serve and file such note of issue. The First Department, interpreting this amendment, accorded it an extremely narrow construction. (See Mulinos v. Coliseum Constr. Corp., 22 A D 2d 163; Brown v. Weissberg, 22 A D 2d 282.) The court decided that the 45-day demand provision was only intended to apply when the motion was predicated upon a failure to file a note of issue, and was not required when there was also ‘ ‘ general delay ’ ’ on the part of the plaintiff. The Legislature attempted to overturn these restrictive decisions by a new measure which it passed in 1965. In the plainest of terms, the 1965 bill required that the 45-day demand prescription was to be applied to all motions made prior to the filing of a note of issue, whether the delay was characterized as * ‘ general ’ ’ or otherwise.
Although the Governor vetoed the proposed 1965 amendment (see Message of the Governor, 1965 Legis. Ann., p. 551), the same result was accomplished by the decision in Salama v. Cohen (16 N Y 2d 1058). We held in that case that, even under the rule as it then read, "a motion to dismiss under CPLR 3216 cannot be granted prior to the filing of a note of issue unless defendant, has first served a written demand on the plaintiff to serve and file the note of issue within 45 days in accordance with the terms of the statute ” (16 N Y 2d, at pp. 1059-1060).
However, the effectiveness of the Salama decision was considerably undercut by Commercial Credit Corp. v. Lafayette Lincoln-Mercury (17 Ñ Y 2d 367). It was there determined that, even after the filing of a note of issue, the court could dismiss a complaint for “ general delay” occurring before the note of issue was filed. Under this decision, a plaintiff, although he complied with the 45-day demand and served his note of issue, was still liable to have his complaint dismissed on the basis of the precedent * ‘ general delay. ’ ’ Then came this court’s decision in Thomas v. Melbert Foods (19 N Y 2d 216). Stating that the Commercial Credit case had reduced the 45-day notice require *246 ment to a “ meaningless gesture,” the court overruled Salama v. Cohen (16 N Y 2d 1058, supra) and adopted the distinction, originally formulated by the Appellate Division in Mulinos (22 A D 2d 163, supra) and Brown (22 A D 2d 282, supra), between motions premised upon general delay — for which no 45-day demand need be given—and those based solely upon the failure to file a note of issue — to which the statute would still apply.
Within two months after the Thomas decision, the Legislature enacted the version of rule 3216 involved in the present appeals (L. 1967, ch. 770). As it now reads, the statute permits of no doubt as to its meaning: no motion to dismiss for failure to prosecute, brought prior to the filing of a note of issue, may be made unless the defendant has first served the plaintiff with a demand that he file a note of issue. In other words, under the 1967 change, any plaintiff who has neglected to place his case on the calendar for any reason automatically gets a second chance to do so before his case may be dismissed.
Opponents of this measure, including the defendants before us, argue that delay in prosecution indicates that the suit lacks merit and that the statute which, in effect (it is said), eliminates the motion to dismiss deprives the court of a necessary and efficient method for getting rid of frivolous actions and reducing calendar congestion. Contrariwise, its proponents maintain that there is no necessary connection between a lawyer’s delay in placing a case on the calendar and the merits of his client’s ease. Thus, they urge, the dismissal of actions on this ground, particularly after the Statute of Limitations has barred all chance of filing another complaint, is an excessive penalty which may work undue hardship in many instances. These are policy considerations about which reasonable men may well entertain different opinions, considerations with which we may not concern ourselves on this appeal. Our only present concern is whether the statute is constitutional, not whether giving a plaintiff a “ second chance ” by requiring that a 45-day demand be served upon him is desirable or wise.
The opportunity, which the statute affords, to correct a procedural default would seem, on its face, to present no constitutional issue of any significance; our own court rules provide for a similar procedure before an appeal may be dismissed for a failure to file briefs and records. (See Rules of the Court of *247 Appeals, rule VI: 22 NYCRR 500.6.) In point of fact, outside of the First Department, the courts which have considered the constitutional arguments advanced by the defendants found them to be without merit. (See, e.g., Kull v. City of New York, 31 A D 2d 638 [2d Dept]; Johnson v. Parrow, 56 Misc 2d 863 [Ontario County]; see, also, Foisy v. Penn Aluminum, 31 A D 2d 783 [4th Dept.].) In the Cohn case—now before us—the Appellate Division for the First Department cited no particular provision of our State Constitution to support its conclusion that the 1967 rule was unconstitutional, and we seek in vain for language which limits the legislative power to act in this area. On the contrary, section 30 of article VI of the Constitution explicitly grants the Legislature broad power to formulate rules of procedure, providing, as it does, that the courts may adopt “ regulations ” as long as they are “ consistent with the general practice and procedure as provided by statute. ” [3] It does limit the Legislature’s power to that which it “ has heretofore exercised,” and few would deny that there are some matters which, by virtue of the very nature of our governmental structure, are beyond the reach of legislative treatment. Nevertheless, the language of the Constitution leaves little room for doubt that the authority to regulate practice and procedure in the courts lies principally with the Legislature.
Despite the fact that the present Constitution — as indeed has each of its predecessors since 1846—vests broad power in the Legislature to make procedural rules for the courts, it is contended that the particular procedure involved, the motion to dismiss for failure to prosecute, is such a fundamental part of a court’s inherent power that it is beyond the competence of the Legislature to limit or circumscribe its availability. The *248 contention lacks substance; study of the subject reveals that the procedural device of dismissing complaints or actions for undue delay was a legislative creation and not, as is urged, a product of the court’s inherent power.
When the Supreme Court of New York was created, in 1691, it was accorded all of the powers then exercised by the common-law courts of England. (See 1 Colonial Laws of New York, pp. 226-229.) The only procedure available, under the law as it existed in the 17th century, for dealing with excessive delay in bringing a case to trial was the “ trial by proviso ”. This was a method whereby the defendant would notice the case for trial himself and, if the plaintiff were to fail either to appear or-countermand the notice, he could be nonsuited by virtue of his default. If, though, the plaintiff did appear, the case was tried on the merits regardless of any prior delay. (See, e.g., 3 Blackstone, Comm. [4th ed., 1771], pp. 356-357; Cox, Common Law Practice in Civil Actions, p. 58; 1 Dunlap, Supreme Court Practice, pp. 552-553; 2 Tidd, Practice of King’s Bench [4th ed., 1808], pp. 690-692. Cf. CPLR 3402.) It was not until 1714, when New York’s Colonial Legislature passed an “Act for shortening of Law Suits and Regulating the Practice of the Law” (1 Colonial Laws of New York, pp. 841-843), that, for the first time, failure to bring a case to trial became, in itself, a ground for dismissal.[4] In England, the power to dismiss actions for failure to prosecute was first given to the courts in 1741 by the Statute 14 Geo. II, ch. 17. That new law permitted a court to enter a judgment of nonsuit where issue had been joined and the plaintiff or plaintiffs “ hath or have neglected, or shall neglect, to bring such issue on to be tried according to the course and practice of the * * * courts A similar provision was enacted by our Colonial Legislature in 1771 (5 Colonial Laws of New York, pp. 207-208) and continued in effect, with minor revision, until the adoption of the Field Code in 1848 (Code of Procedure, § 274).
Consequently, then, since it was the legislative body, and not the court, which first authorized the dismissal of a cause of action as a sanction against plaintiffs who were dilatory in *249 bringing their eases to trial, there would appear to be little historical basis for the contention that the motion to dismiss is so necessary to the exercise of the judicial function as to be immune from legislative interference. Indeed, the general power of the Legislature to formulate rules of practice for our courts is so firmly embedded in the tradition of this State that the defendants have been able to find only one case in which a procedural statute has ever been found to be an unconstitutional infringement upon judicial prerogatives. (See Riglander v. Star Co., 98 App. Div. 101, affd. 181 N.Y. 531.)
At issue in the Riglander case (98 App. Div. 101, supra) was a section of the old Code of Civil Procedure (§ 793) which required that cases, which qualified for a preference, be set down for trial on a specified date and that, regardless of the readiness of the parties, the court must hear the case on that day. The Appellate Division found this provision to be unconstitutional on two grounds: first, that it violated due process by forcing a party to trial whether or not he was prepared and, second, that it interfered with the inherent power of the courts to control their calendars. With respect to the second ground, the court said (98 App. Div., at p. 105):
“The courts are not the puppets of the Legislature. They are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions. And while the Legislature has the power to alter and regulate the proceedings in law and equity, it can only exercise such power in that respect as it has heretofore exercised; and it has never before attempted to deprive the courts of that judicial discretion which they have been always accustomed to exercise.”
The Riglander case was appealed to the Court of Appeals on a certified question; the court affirmed without stating the grounds for its decision (181 N. Y. 531).
As is manifest, there are important differences between the Riglander decision—or, more precisely, the statute then under consideration — and the present case. The statutory provision there stricken as unconstitutional purported to mandate the *250 specific day on which an action, already on the calendar, had to he tried. This was a matter which, by long tradition, had been left to the absolute discretion of the courts to exercise not only on the basis of calendar convenience but also upon considerations of fairness to the parties concerned. In the present situation, in sharp contrast, we are concerned with whether a case, not yet placed on the calendar, should ever reach a trial on the merits. After noting the “ significant differences ” between Cohn and Biglander and the “ restrictive interpretation ” which had been given the latter over the years, one commentator pointed up the distinction between the cases in this way (Note, 43 N. Y. U. L. Rev. 776, 781-782):
“ The [Appellate Division’s] decision in Cohn extends the Biglander decision far beyond even its original limits. "Where Biglander stressed the close association of due process to the discretionary handling of trial preferences, no such importance attaches to the discretion claimed by the court in Cohn. Its purpose is to aid in the clearing of court calendars rather than to aid or insure a fair trial. Indeed, the Cohn decision, by relaxing the rigid requirements for dismissal designed to protect plaintiff’s case, makes it easier for plaintiff to lose his day in court. Thus, whereas in Biglander the twin considerations of preserving traditional court power and guaranteeing due process were complementary, in Cohn they are antagonistic. The preservation of unrestricted judicial power to dismiss is at the expense of the protection established for plaintiffs under CPLR 3216.”
In addition to the fact that neither the language of the Constitution, the history of the provision involved nor relevant judicial authority supports the Appellate Division’s conclusion, grave practical considerations exist which militate against it. As Justice Stevens pointed out in the course of his dissent below, the decision reached by his court not only frustrates the clearly expressed design and desire of the Legislature with respect to this particular question but would throw into jeopardy numerous other provisions of the broad and comprehensive *251 procedural scheme which constitutes the CPLR (30 A D 2d, at pp. 78-79):
“ While the court necessarily must have a broad control over its calendars, the Legislature has, upon occasion, provided, by statute, how that calendar shall be run in terms of priority (see CPLR 3403, 3404) and how a trial shall be conducted (CPLR 4012 et seq.). There is even a limitation on the granting of leave to replead unless the court is satisfied the party has good ground to support his cause (CPLR 3211, subd. [e]). The time limitations for certain motions (for example, CPLR 3123) or procedures (CPLR 3031 et seq.) may, directly or indirectly, affect the calendar.”
In short, to hold CPLE 3216 invalid because it interferes with court calendars would cast a constitutional pall over many other provisions and undermine the entire concept of a statutory code of judicial procedure of the type employed in this State since the enactment of the Field Code in 1848. The predominance of a legislatively enacted code of procedure over court-formulated rules resulted from widespread dissatisfaction with the earlier process of developing such rules through judicial decision-making. In recent years, it is true, there has been a tendency in some jurisdictions to return this rule-making function to the court, albeit in much different form.[5] We may, as students of the judicial process, strongly favor having the court invested with the power to regulate procedure and to promulgate rules bearing thereon. However, in the light of the scheme currently *252 provided for in our State Constitution, we have no alternative but to accord to the Legislature, and to the CPLR which it enacted, a considerable degree of controlling effect over the powers of the court. Merely because a particular section does not comport with our own idea of what is needed for efficient judicial administration furnishes insufficient basis for declaring that section unconstitutional. As Professor David Siegel succinctly stated in his Supplementary Practice Commentary (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 3101-3400 [1968 Cum. Supp.], pp. 307-308),
“ It is one thing to be of the view (which this writer holds) that the power to regulate procedure should be in the courts. It is quite another to say that it is there in the face of clear evidence that the constitution chose not to lodge it there.”
In conclusion, the Appellate Division’s decision invalidating the particular provision before us not only goes counter to the language and the history of this State’s Constitution but also throws into doubt a number of other portions of the carefully formulated CPLR. Recognizing, as we must, that the statute —'Whatever we may think of the policy it expresses — constitutes a valid exercise of the legislative power, the necessity to reverse is clear.
In each case, the order appealed from should be reversed and the motion to dismiss the complaint denied, with costs.
Judges Burke, Soileppi, Bergan, Breitel and Jasen concur.
In each case: Order reversed, with costs, and case remitted to Special Term for further proceedings in accordance with thq opinion herein.

. CPLR 3216 reads, in relevant part, as follows:
“ (a) Where a party unreasonably neglects to proceed generally in an action * * * or unreasonably fails to serve and file a note of issue, the court, on its own initiative er upon motion, may dismiss the party’s pleading on terms. * * *
“ (b) No dismissal shall be directed under any portion of subdivision (a) of this rule and no court initiative shall be taken or motion made thereunder unless the following conditions precedent have been complied with:
(1) Issue must have been joined in the action;
(2) One year must have elapsed since the joinder of issue;
i (3) The court or party seeking such relief, as the case may be, shall have served a written demand by registered or certified mail requiring the party against whom such relief is sought to resume prosecution of the action vand to serve and file a note of issue, within forty-five days after receipt of such demand, and further stating that the default by the party upon whom such notice is served in complying with such demand within said forty-five day period will *242 serve as a basis for a motion by the party serving said demand for dismissal as against him for unreasonably neglecting to proceed.
“ (e) In the event that the party upon whom is served the demand specified in subdivision (b) (3) of this rule serves and files a note of issue within such forty-five day period, the same shall be deemed sufficient compliance with such demand and diligent prosecution of the action; and in such event, no such court initiative shall be taken and no such motion shall be made, and if taken or made, the court initiative or motion to dismiss shall be denied.
“ (d) After an action has been placed on the calendar by the service and filing of a note of issue, with or without any such demand, provided, however, if such demand has been served, within the said forty-five day period, the action may not be dismissed by reason of any neglect, failure or delay in prosecution of the action prior to the said service and filing of such note of issue.
“ (e) In the event that the party upon whom is served the demand specified in subdivision (b) (3) of this rule fails to serve and. file a note of issue within such forty-five day period, the court may take such ■ initiative or grant such-motion unless the said party shows justifiable excuse for the delay, and a good and meritorious cause of action.”

. Although the notice of motion was served prior to its effective date, the motion was not decided or even submitted to the court until after the amendment had gone into effect. Since it expressly commands the court that “Ho dismissal shall be directed ” unless it was preceded by service of a 45-day written demand to file a note of issue, it applies to all motions reaching the court for decision after that date. (See Foisy v. Penn Aluminum, 31 A D 2d 783 [4th Dept.]; Williams v. Baker, 29 A D 2d 915 [4th Dept.]; Goldberg v. Schwartz, 29 A D 2d 873 [2d Dept.]; Terasaka v. Rehfield, 28 A D 2d 1011 [2d Dept]; Kaprow v. Jacoby, 28 A D 2d 722 [2d Dept.].) This, we note, was also the view of the First Department before it held the statute unconstitutional in the Cohn ease. (See Mayo v. New Sands Operating Corp., 29 A D 2d 926; Mandell v. Continental Ins. Co., 29 A D 2d 742.)

. The full text of section 30 of article VI of the Constitution is as follows: “ The legislature shall have the same power to alter and regulate the jurisdiction and proceedings in law and in equity that it has heretofore exercised. The legislature may, on such terms as it shall provide and subject to subsequent modification, delegate, in whole or in part, to a court, including the appellate division of the supreme court, to the administrative board of the judicial conference, or to the judicial conference, any power possessed by the legislature to regulate practice and procedure in the courts. Nothing herein contained shall prevent the adoption of regulations by individual courts consistent with the general practice and procedure as provided by statute or general rules.”

. The 1714 statute provided that “the Plaintiff shall come to Try all the next Court after Issue Joyned, or be Non suited, unless the Court see cause to the contrary ”.

. The most notable example of this trend is the Federal Rules of Civil Procedure, adopted not by Congress but by the Supreme Court (U. S. Code, tit. 28, § 2072). The Federal Rules, however, although a product of the courts, were not the result of the meum et tuurn of judicial proceedings but were formulated, instead, by a process that may well be characterized as legislative. Hearings were held by an Advisory Committee which proposed a set of comprehensive rules, in a format that closely resembled a statutory code of procedure. (See Hart and Weehsler, The Federal Courts and the Federal System, p. 589.) Moreover, and this is most significant, Congress retains the ultimate power to veto the court-formulated Federal Rules by providing that they “ shall not take effect until they shall have been reported to Congress by the Chief Justice * * * and until the expiration of ninety days after they have been reported” (U. S. Code, tit. 28, § 2072).