**STATE of Oklahoma, Appellee,**

v.

**Eric BROWN, Mark Wade Hand, Anthony Q. Wallace, Kathleen D. Struble, David Leo Morton, Jerry Wayne Skinner, Bruno H. Ochoa, Eric Duane Clark, and Reginald Ronald Johnson, Appellants.**

**No. 75883.**

Court of Appeals of Oklahoma, Division No. 2.

April 27, 1993.

Aletia C. Haynes, Assistant Dist. Atty., Oklahoma City, for appellee.

John Romig Smith, Oklahoma City, for appellants.

BRIGHTMIRE, Judge.

Nine criminal bond forfeiture cases involving a common issue of law were consolidated for decision by the trial court. The issue is this: Whether the effect of legislative amendments to the bail bond statutes which eliminate the court's discretion with regard to bond forfeitures unconstitutionally offend the separation of powers doctrine by impermissibly encroaching on the court's power to control its docket.

The trial court held that the amendments have such an effect and were therefore unconstitutionally void. We, however, hold they do not have, vacate the trial court's orders rejecting the motions to vacate bond forfeitures and remand with instructions to grant the relief requested.

## I

On June 14, 1990, the court heard motions filed by bondsmen in nine criminal cases. In seven of them the bondsmen had captured and returned the bail jumpers to state custody within ninety days after orders and judgments of forfeiture had been entered. In the other two cases the bondsmen were unable to retrieve the bailees within the ninety-day period, but timely paid the amount of the forfeiture, and then successfully caught and returned the escapees to custody within one-hundred-eighty-days of receipt of the notice.

The trial judge started the hearing off by saying he had purposefully "saved up all of the bond forfeitures during the month of May" 1990 in order to test the constitution-

ality of amendments to 59 O.S.Supp.1989 § 1332(C) & (E).[1] The principal target of the trial judge's concern is the amendment which provides that "[w]hen the defendant is returned to custody within the ninety-day period, *the forfeiture shall be vacated.*"[2] At the hearing the trial judge voiced his disagreement with the amendments and provided some insight into the rationale underlying his conclusion that the amendments permitted the bondsmen to hamper his inherent power to control his docket, saying:

"[J]udges are automatically signing orders setting aside bond forfeitures and granting remittiturs [*sic*].... They don't seem to even look into it to or question it.... The court is charged with setting a docket, having sufficient jurors to try the case, and ordering witnesses to appear subpoena [*sic*] both for the defendant and for the State. The control over the court's docket is something that must be exercised by the court and cannot be exercised by professional bondsmen who can decide any time within a ninety (90) day period of time when a defendant will appear in court. Such a policy, if that was the intent of the legislature, is contrary to public policy and is an inherent violation of separation of powers."

It was upon this legal construct that the judge rested his conclusion that subject statute was unconstitutional and, having thus wiped out the assailed amendments, he went on to apply the legislature's earlier law by finding that "there was no evidence to convince the Court that it should set aside its forfeiture(s)." And based on such finding he denied each of the motions.

The bondsmen, of course, appeal.

## II

■ The bondsmen's three propositions of error may be combined and restated this

1. Laws 1990, ch. 195, § 8 (eff. May 10, 1990). The judge also expressed concern about the fact other judges were signing a lot of remitters and, with respect to his theory of constitutionality, the judge complained that the District Attorney's office was filing briefs which "are of no assistance from the standpoint of advocacy."

2. Emphasis added. The main effect of the amendments in question was to eliminate the requirement of a bondsman having to present evidence of a "sufficient excuse" for failure of the bailed defendant to appear as ordered—assuming, of course, that the bondsman met other statutory requirements.

way: That the legislative elimination of the "sufficient excuse" requirement in 22 O.S.Supp.1988 § 1108,[3] coupled with enactment of the mandatory provisions of § 1332(E)(3), do not amount to an encroachment on the inherent power of the judicial branch of government and therefore do not violate the doctrine of separation of powers.

We agree. The State relies[4] primarily on the judge's constitutionality remarks and the holdings in *State v. Fish*,[5] and *State v. Ebenhack*.[6] The trouble is that the judge supplied no legal foundation for his inherent judicial power theory and both of the cases he and the State cite predate the amendments of §§ 1332 and 1108(A) which form the foundation for the trial judge's sua sponte complaint. Actually, it appears the trial judge may have recognized this because he anchored his decision not on the cited caselaw but on an assumed unconstitutionality of the condemned later statutory changes.

A short review of caselaw and the statutory amendments in question will aid in understanding the problem. In 1987 the legislature excised from § 1332 the following language which was crucial to the *Fish*[7] result dealing with the bases for granting a remitter: "which motion shall contain the grounds upon which it relies." Abolition of this requirement clearly manifested the legislature's intent to undermine the *Fish* linkage of the § 1108 "sufficient excuse" requirement to the relevant § 1332 provisions.[8] In this regard, it should also be noted that quite aside from their impact on *Fish*, is the legal effect the 1986 modification and recodification of 59 O.S.Supp. 1986 § 1332(C)(5)(b) and the present § 1332(C) has on the rights of the bondsman. It gave a bondsman *90 days* from the receipt of the order and judgment of forfeiture *"to return the defendant to custody"* before having to make a deposit, thereby abolishing the earlier requirement that the bondsman deposit cash or other valuable securities in the face amount of the bond within 20 days from such receipt.

And, finally came the 1990 amendments which made it mandatory to vacate the forfeiture *when the defendant is returned within ninety days from receipt of the order and judgment of forfeiture*. If a defendant was not returned to custody within ninety days, §§ 1332(D) provides that the bondsman "shall deposit cash or other valuable securities in the face amount of the bond with the court clerk ninety-one (91) days from receipt of the order and judgment of forfeiture...." Then, if the defendant is returned within an additional ninety days "after payment is due, or upon proof to the court that the defendant is still in custody in [another] jurisdiction, and all expenses have been paid by the bondsman" he "may file a motion for remitter within one hundred eighty (180) days from receipt of the order and judgment of forfeiture" and his "property shall be returned."

This brings us finally to the trial judge's principal contention: That the ultimate effect of subject amendments is to grant bail bondsmen control of the court's docket by giving them authority to "decide any time within a ninety (90) day period of time when a defendant will appear in court"—a grant of control which the judge deems unconstitutional because it infringes on the court's inherent power to set and control its docket.

The judge's legal postulation is without merit. It is, of course, fundamental that the powers of government are divided among three departments of government—

---

3. *See* Laws 1989, ch. 348, § 16.

4. In support of its argument the State relies solely on the transcript of the proceeding and the court's order.

5. 747 P.2d 956 (Okl.1987).

6. 748 P.2d 538 (Okl.App.1985).

7. The same amendments likewise affect the vitality of the *Ebenhack* holding.

8. And as if to make sure the legislative intent was not misunderstood, the legislature took the additional step of striking the "sufficient excuse" requirement from 22 O.S.Supp.1988 § 1108, in an amendment effective November 1, 1989. *See* Laws 1989 ch. 348, § 16.

the legislative, executive, and judicial.[9] But our Constitution also contains a people's Bill of Rights which among other things contains this one: "All persons shall be bailable by sufficient sureties" with certain exceptions not material here.[10]

With respect to the powers belonging to the judicial department, art. VII, § 7 of our constitution vests in the district courts "unlimited original jurisdiction of all justiciable matters...." with certain exceptions, and § 4 vests in the supreme court appellate and certain original jurisdiction including "a general superintending control over all inferior courts."

In addition it is universally settled decisional law that the judiciary possesses what is called certain inherent power which has been broadly defined as its "exclusive authority to manage its own affairs."[11] It "includes power to make, and enforce, reasonable rules for orderly procedure before courts" and when "the legislature acts with regard to a matter over which courts have ultimate authority, and acts in a way to deprive courts of that authority, the legislative act is an unconstitutional abridgement of the principle of separation of powers."[12]

A decision which discussed the matter of the courts' inherent powers at some length is the early case of *Atchison, T. & S.F.Ry. v. Long*.[13] There the court was faced with the issue of whether a statute enacted by a vote of the people on an initiative petition could constitutionally require that (1) the district courts of this state try certain cases within 10 days after the defendant answered; (2) appeals be taken within 10 days from the rendition of judgment (with authority granted the court to extend the time to 20 days if good cause is shown); and (3) "the Supreme Court shall determine

the appeal at the earliest possible moment."

In the process of holding that these statutory provisions were unconstitutional infringements on the inherent powers of the judicial branch of the government, the *Atchison* court reviewed relevant cases decided by this and other states. For instance, it quoted the Ohio Supreme Court as saying this:

" 'True, the general subject-matter of procedure by the parties to the cause, prescribing the manner of invoking the jurisdiction, the pleadings, and the time within which the jurisdiction shall be invoked, in short, the adjective law of a case, has always been regarded within the proper province of legislative action, yet the legislative branch of the government is without constitutional authority to limit the judicial branch of the government in respect to when it shall hear or determine any cause of action within its lawful jurisdiction.

" 'Whether or not justice is administered without 'denial or delay' is a matter for which the judges are answerable to the people, and not to General Assembly of Ohio.' "

The Ohio court proceeded to hold that a statute requiring the court to hear or determine a cause within 30 days from the time it is filed or submitted to the court " 'is an unreasonable and unconstitutional invasion of judicial power and therefore void.' "

The *Atchison* court also adopted both the reasoning and the language of the court in *Riglander v. Star Company*.[14] There the New York legislature had enacted a statute which required certain New York courts to give preference to the trial of certain cases. After the courts held that the provision was discretionary rather than mandatory,

---

**9.** Okl. Const. art. IV, § 1 reads as follows:

"The powers of the government of the State of Oklahoma shall be divided into three separate departments: The Legislative, Executive, and Judicial; and except as provided in this Constitution, the Legislative, Executive, and Judicial departments of government shall be separate and distinct, and neither shall exercise the powers properly belonging to either of the others."

**10.** Okl. Const. art. II, § 8.

**11.** *Petuskey v. Cannon*, 742 P.2d 1117, 1120 (Okl. 1987).

**12.** *Puckett v. Cook*, 586 P.2d 721, 723 (Okl.1978).

**13.** 122 Okl. 86, 251 P. 486 (1926).

**14.** 98 App.Div. 101, 90 N.Y.S. 772 (1904), *aff'd*, 181 N.Y. 531, 73 N.E. 1131 (1905).

the legislature sought to strengthen the statute by providing that:

> " 'The court or justice must designate a day certain, during that term, on which day the said cause shall then be heard; if there be two or more causes so designated for trial for the same day, the said causes shall be heard in the order of their date of issue.' "

"And the court there held," said *Atchison*, "that, inasmuch as the Legislature attempted to strip the courts of those discretionary powers that courts have exercised since their organization, that it was violative of the Constitution providing for the separation of the three branches of the government."

Consequently the *Atchison* court held that the initiative measure constituted a constitutionally impermissible invasion of the court's inherent powers and was therefore void.

Here, to the extent that § 1332(E)(3) dictates that the "court shall hear the motion for remitter within thirty (30) days from filing of the motion," it would likewise appear to be unconstitutional. But that is not what the judge here is complaining about. His complaint concerns an *indirect consequence* of substantive laws enacted to establish a reasonable public policy in furtherance of a legitimate legislative purpose. Since the constitution requires that certain people charged with crimes be released on bail, it is, therefore, certainly within the powers granted the legislature to enact laws, both procedural and substantive, which protect, facilitate, regulate and promote appropriate enforcement of the people's right to bail. A succinct synopsis of the powers assigned to the legislature was abstracted from a long line of cases by the court in *Palmer Oil Corporation v. Phillips Petroleum Company* [15] in its first syllabus. It reads:

> "The Legislature is itself the judge of the conditions which warrant legislative enactments, and they are only to be set aside when they involve such palpable abuse of power and lack of reasonableness to accomplish a lawful end that they may be said to be arbitrary, capricious, and unreasonable, and hence irreconcilable with the conception of due process of law. Whether the enactment is wise or unwise, whether it is based on sound economic theory, whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are ordinarily matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within the range of judicial cognizance."

Here, the legislature acted within the prescribed parameters of its constitutionally ordained powers by enacting the amendments in question; the amendments may not be judicially nullified merely because their everyday application may have a negative impact on trial court docketing.

### III

The order issued May 31, 1990, denying the motions to vacate the orders and judgments of forfeiture in Case Nos. CRF–86–5953; CF–90–970; CM–90–594; CM–90–582; CM–90–415; CF–89–6502; and CF–89–5476 is therefore vacated and the matter is remanded to the trial court with directions to grant the movants such relief as is prescribed by law and to conduct a hearing within a reasonable time after mandate issues in this appeal with respect to the motions for remitter filed in Case Nos. CF–89–6802 and CM–89–2934.

REIF, V.C.J., and RAPP, P.J., concur.

---

**15.** 204 Okl. 543, 231 P.2d 997, 999 (1951), appeal dismissed, 343 U.S. 390, 72 S.Ct. 842, 96 L.Ed. 1022 (1952) (per curium).