OPINION OF THE COURT
Ralph Yachnin, J.
This is an action for divorce with an interposed counterclaim for the same relief. The pleadings are extensive and replete with details involving alleged sexual misconduct as well as cruel and inhuman treatment.
On March 16, 1989 an application for audio-visual coverage *300 was made by Fox TV WNYW, NY involving videotape for later broadcast. The newspaper Newsday also brought on an application for use of still photography throughout the proceeding.
On March 17, 1989 in accordance with 22 NYCRR 131.4 a conference was held wherein the parties, their attorneys and a representative of Fox TV, Susan Butler, were present. Ms. Butler requested that the court permit television cameras to be operated in the courtroom. The attorney for the defendant joined in her application. The attorney for the plaintiff opposed it.
In December 1987 a rule was enacted by the Chief Administrative Judge of the Courts to guide the judiciary as to when and in what circumstances television and other cameras should be permitted in the courtroom. The tone of the rules is undoubtedly that in the average case such coverage should be permitted with limitation, if any, as set by the court and those further limitations which the rules impose.
This court believes that because of the type of case, because of other statutes enacted by the Legislature, because of the age of the witnesses and testimony to be elicited, video and/or still camera coverage should not be allowed.
22 NYCRR 131.4 (c) sets forth the relevant factors which the court should consider. The first one is the type of case involved. This is an action for divorce; a very private matter. Testimony will be given regarding conversations and events that took place at the most intimate of places possible, i.e., the parties’ home, the parties’ bedroom, and even the parties’ bathroom. There is no possible reason for the public to have an interest in this type of testimony. Were this another type of action the very testimony itself between husband and wife would be stricken as privileged!
The second provision is whether the coverage would cause harm to any participant. Besides the parties herein there are three children: a 14-year-old daughter, a 13-year-old son and a 9-year-old son. As a result of prior hearings in this matter, this court has seen pictures of the parties’ daughter as well as glaring headlines and sensational articles in the newspapers. There is no doubt that this holds her and the other children as well as the parties up to derision and embarrassment by their peers. To magnify this now, by causing these children and their parents to be placed on the television screen of millions and millions of homes and undoubtedly of their *301 friends, could cause nothing but more anguish and permanent scars to be encrusted upon the reputations of these innocent young children, and, of course, on the parents also.
It seems that paragraph (5) was set down purposely to alert the court that the subject proceeding is not the type to be shown on television for it mandates that the court take into consideration "whether the proceeding would involve lewd or scandalous matters”. Rarely has this court ever seen a case with more lewd allegations and scandalous assertions than the instant proceeding. The pleadings, and especially the counterclaim, are replete with the most lurid sexual conceptions and allegations that could be imagined. The subject would appeal only to the most prurient of interests and if for no other reason than paragraph (5), this application should be denied.
The court under paragraph (6) must take into consideration whether any of the parties object and to be sure the plaintiff has interposed such objection.
In the unnumbered paragraph immediately following paragraph (8) there is the requirement that the court take into consideration and "give great weight to” whether any of the witnesses are children. The court has already noted this heretofore.
The denial of the application to allow video and/or still cameras to be present during the trial of this action is not only consistent with, but mandated by, the said rules. However, even if this were not so, 22 NYCRR 131.4 is but one of the Uniform Rules for the New York State Trial Courts and while it must be complied with, if it conflicts with a statute, then it must give way.
"There are some matters which are not subject to legislative control because they deal with the inherent nature of the judicial function (see, e.g., Riglander v Star Co., 98 App Div 101, affd 181 NY 531). Generally, however, the Legislature has the power to prescribe rules of practice governing court proceedings, and any rules the courts adopt must be consistent with existing legislation and may be subsequently abrogated by statute (Cohn v Borchard Affiliations, 25 NY2d 237). In addition, court rules must be adopted in accordance with procedures prescribed by the Constitution and statute (NY Const, art VI, § 30; Judiciary Law § 211 [1] [b]).” (Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 5-6.)
An examination of the legislative enactments regarding trials of divorce actions fortify this banning of video and/or *302 still cameras from the courtroom. Domestic Relations Law §235 creates a special category for certain types of cases. It deals with those cases which the Legislature felt were so sensitive, so personal and of such a delicate nature, it mandated that not only could the general public be barred from its view, but that all persons other than the parties and their attorneys are prohibited from examining any of the pleadings, affidavits, findings of fact, conclusions of law, etc. It is noted that this relates only to matrimonial actions.
"This statute has an ancient history, going back to 1847. The policy behind the rule is that matrimonial matters can involve painful, even embarrassing details, which the parties should have a right to keep private. Absent some overriding importance to the persons who would have access to the file, that privacy should be respected. Moreover, to the extent that the particular matrimonial matter might be subject to media publicity, the statute holds that such potentially embarrassing material should remain private, lest the details be used for spite or for scandal. See Stevenson v. News Syndicate Co., 276 App. Div. 614, 615, 96 N.Y.S.2d 751 (2nd Dept. 1950), affirmed 302 N.Y. 81, 96 N.E.2d 187.” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C235:1, at 121.) As a matter of fact this section so jealously guards the parties’ privacy that under subdivision (2) of this section the court has the right to bar the public from the trial.
In addition, the Legislature was so vehement in its efforts to protect the privacy of the litigants from the unnecessary peering of the public that it also enacted section 4 of the Judiciary Law: "The sittings of every court within this state shall be public * * * except that in all proceedings and trials in cases for divorce * * * the court may, in its discretion, exclude therefrom all persons who are not directly interested therein”.
There has been an intimation that the public has a right to hear the "sordid details of any particular matrimonial action * * * [but] such interest is outweighed by the need to preserve the confidentiality of the parties.” (Scheinkman, Practice Commentary, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C235:2, at 123.)
The applications for video coverage and still photography coverage are denied.