Daniel E. Macken, J.
Plaintiff moves to punish defendants for contempt pursuant to the Judiciary Law and to impose penalties for failure to comply with disclosure orders pursuant to CPLR 3126,
Plaintiff and defendant Willard Bumgarner were partners in the building and sale of houses. This action for accounting and other relief was commenced June 10, 1964. Defendant Willard Bumgarner counter-claimed for dissolution and accounting. Subsequently, defendants’ attorney withdrew and, although it appears that a stipulation substituting defendants’ present attorney was executed October 22, 1964, an order of substitution was not served until December. Defendants’ present counsel forthwith commenced a separate action for Bumgarner as plaintiff against Warner, seeking relief which could well be *489 obtained in this action. The pattern of the procedures which followed might have been foreseen when on Christmas Eve, Thursday, December 24, 1964, defendants in this action served a notice to examine the plaintiff on Tuesday, December 29. On December 28 plaintiff served a notice to examine the defendants on January 7. Both parties promptly served written objections pursuant to CPLR 3112 and on December 30 plaintiff moved to vacate defendants’ notice and require defendants to comply with plaintiff’s notice. On February 19,1965 Justice Bbasseb ordered that defendants first be examined to be followed by examination of the plaintiff and appointed Arnold J. Goldman, Esq., an attorney, Referee to supervise the proceedings. The examination of the defendants proceeded before Mr. Goldman on March 16,17 and 18,1965, following which Mr. Goldman asked to be relieved.
In an affidavit submitted on this motion Mr. Goldman says:
“ Said Mr. Bumgarner was a hostile and evasive witness. He continually insisted upon off-the-record conversations as a condition to responding to questions. This consumed a substantial amount of the time devoted to the hearings. These conversations consisted of lengthy argument with deponent as referee or with the examining attorney. Much of his testimony was non-responsive. He refused to answer relevant questions or produce relevant records in his control, notwithstanding my rulings and directions to him.
“ After much effort on my part to explain to Mr. Bumgarner the proper procedure in such proceeding, his obligation to disclose as well as his rights, I concluded that his conduct was not the result of lack of understanding; that his attitude would not change; that my authority as referee could not compel a change; that in the absence of compulsion, the proceeding would be prolonged, interfering substantially with my duties as an attorney at law.
“ After each of said hearings and during recesses, Mr. Bum-garner also engaged in uninvited conversations consisting of uncomplimentary remarks addressed to plaintiff and his attorney, notwithstanding that neither plaintiff nor his attorney engaged in any conversations with said Mr. Bumgarner. These incidents interfered substantially with the proper conduct of other business transacted in my office.”
The transcript of the proceedings before him amply supports Mr. Goldman’s affidavit.
The examination continued before Olive L. Cripps, a court reporter, on April 9, 14 and 26. The examination was not then completed and defendants failed to appear on several subse *490 quent adjourned dates. In an affidavit submitted on this motion, Mrs. Cripps says:
‘ ‘ At said hearings attended by me, a substantial portion of the time was consumed as follows: In response to questions of the examining attorney, David R. Levin, said Mr. Bum-garner frequently stated that he wanted to and did speak off the record; would then engage in argument with said attorney or move from his seat to his own attorney and engage in private conferences with him lasting ten and upwards minutes on such occasions; followed by repeated requests to have questions re-read and further conferences with his attorney; and then when asked if he were ready to answer the question would say: ‘ "What question? ’ Many of the questions remained unanswered.
< ( * * #
“During said off-the-record recesses, Mr. Levin on several occasions asked Mr. Bumgarner’s attorney, William L. Clay, if he would advise Mr. Bumgarner to confine his statements to such as answer the questions asked of him, so as to lessen the time and the expense of the proceeding to all concerned. After each of said requests of Mr. Levin to Mr. Clay, Mr. Bumgarner stated in substance: That he didn’t care how costly the hearings would be; that he knew it would be costly and that’s the way he wanted it; that Mr. Warner and not he would have to pay the expense of the hearings; that he, Mr. Bumgarner, would not need any transcript of the hearings because Mr. Warner would accomplish nothing from them.”
Much of Mrs. Cripps ’ affidavit is supported by the transcript.
At about this time Bumgarner’s attorney filed a note of issue with statement of readiness in the action commenced by Bum-garner as plaintiff. On motion by Warner, Justice Brisco on May 24, 1965 vacated the note of issue, struck the case from the calendar, and stayed all proceedings in that action until the completion of pretrial proceedings in this action. On the same date Justice Brisco ordered that the examinations be completed under the supervision of a Justice of this court to be designated by the Justice presiding in Part I on June 14,1965. Thereafter, on several dates designated by Par,t I, defendants failed to appear for examination and by their counsel sought adjournments. The show cause order initiating the present proceeding contains the following recitals:
“ And there being no appearance by or in behalf of the defendants on the last mentioned adjourned date, viz. September 7, 1965; and the plaintiff having then moved for an Order punishing the defendants for contempt and imposing penalties upon *491 them by reason of their failure to comply with said orders of the Court, and this Court having then noted the default of the defendants and adjourned the matter to September 20, 1965, for consideration of said application of plaintiff for imposition of such punishment and penalties;
1‘ And, the plaintiff having duly appeared herein with his attorney on .September 20, 1965, and the defendants having failed to appear on said date except by their counsel, who requested another adjournment of the time for taking their depositions, and the Court having then indicated that an adjournment would be granted provided the defendants would submit to examination on .or before September 24,1965, and counsel for defendants having then stated that the defendants would not do so during said time; ”
The foregoing recitals were apparently within the knowledge of Justice Abk who signed the order and was then presiding in Part I.
I find that the defendants deliberately pursued a course of conduct designed to frustrate their examination. (Glenmark, Inc. v. Carity, 17 A D 2d 126, 128.) I further find that defendants’ conduct from the inception of these disclosure proceedings, taken as a whole, constitutes refusal to obey the orders of this court for disclosure and willful failure to disclose information which this court finds ought to have been disclosed, within the purview of CPLR 3126.
In these circumstances, the fashioning of an order meeting the requirements of justice presents some practical difficulty. Insofar as it seeks accounting and dissolution, and both parties ask for such relief, the action does not lend itself to judgment by default, particularly in view of plaintiff’s contention that much of the information required for an accounting is within the sole possession of defendants.
By the third cause of action in paragraphs 26 through 33 of the complaint, plaintiff alleges that the defendant Willard Bumgarner fraudulently and without consideration conveyed to his wife, defendant Eleanor Bumgarner, a dwelling owned and built by the partnership now being occupied by the defendants as their residence.
An order may be entered pursuant to CPLR 3126 providing that, unless the conditions hereafter stated are met, the answer insofar as it denies the allegations of the third cause of action of the complaint be stricken out and that plaintiff have judgment as by default for the relief sought in paragraph 1 and the first sentence of paragraph 7 of his prayer for relief, and further directing, with respect to the accounting, that the examinations *492 proceed forthwith under the supervision of a Justice of this court to be designated by the Justice presiding in Part I on a date to be stated in the order.
Defendants will be relieved of the penalty with respect to plaintiff’s third cause of action provided within 15 days after service of a copy of the order to be entered herein, they comply with the following conditions:
(1) I see no reason for the maintenance of the action commenced by Bumgarner as plaintiff expect to harass the plaintiff and create confusion, nor do I see any reason why this court should be burdened with further proceedings in connection therewith. The defendants are directed to stipulate that the said action be consolidated with this action and the product of these disclosure proceedings be applicable to the consolidated action.
(2) The requirements of justice are not met by relieving the defendants of penalty and simply making another order directing the disclosure heretofore twice ordered. Plaintiff has expended over $400 for referee and court reporter fees in aborted attempts to secure the ordered disclosure and has obviously incurred substantial additional attorneys’ fees. If plaintiff succeeds in the action, he may recover a portion of his disbursements and, in the light of defendants ’ conduct, the trial court may consider an application for additional allowance pursuant to CPLR 8303 (subd. [a], par. 2). I do not believe, however, that plaintiff should be relegated solely to such relief. That defendants may have a meritorious defense and eventually win the lawsuit affords no justification for their conduct in this proceeding. By reason of that conduct, the examinations to date have been unduly prolonged and substantially fruitless. As a further condition to relief from the penalty hereinbefore imposed, defendants shall pay to plaintiff the sum of $434 disbursements for referee and court reporter fees, a counsel fee of $500, and $20 costs of this motion. (Nomako v. Ashton, 22 A D 2d 683; Bennett Bros. v. Floyd Bennett Farmers Market Corp., 16 A D 2d 897; Di Bartolo v. American & Foreign Ins. Co., 48 Misc 2d 843.)
Writers seem to differ as to whether the punishment of contempt is now available against a party for failure to disclose. In the Supplementary Practice Commentary in the 1965 pocket part of McKinney’s Consolidated Laws of New York (Book 7B, CPLR 3126, pp. 81, 82) David D. Siegel writes: “ CPLR 3126 appears to be a pre-emptive statement of the remedies that may be sought for a party’s failure to disclose. The remedy of contempt is not included. * * * CPLR 3126 appears to give the court all of the remedies required by it to persuade *493 a party to disclose.” Paragraph 3126.06 of Weinstein-Korn-Miller, New York Civil Practice says: “ Punishment for contempt remains as one of the court’s inherent powers ”, citing Glenmark, Inc. v. Carity, 17 A D 2d 126 (supra), decided prior to CPLR.. Insofar as it seeks to punish defendants for contempt, the motion is denied without prejudice to renewal should it appear that the more drastic punishment available thereby is necessary to secure defendants’ compliance with the disclosure orders.
Defendants’ motion to terminate the disclosure proceedings is denied, with $20 costs to plaintiff.