Leonard Leigh Finz, J.
Initially, the decision on these motions must concern itself with the as yet unadjudicated question of what inherent power the court may have to provide a remedy against those who impede justice in a civil case and cause great hardship and expense to opposing parties and their attorneys.
Both defendants move separately for an order granting security for costs to be posted by plaintiff (CPLR 8501, subd [a]). Plaintiff cross-moves for an order striking the answers of the defendants for failure of the defendants to comply with a previous direction of the court.
For the sake of clarity it would be well to deal with the cross motion first and to consider its background. This action came on for trial on or about September 19, 1975, at which time all parties answered "Ready” on the call of the calendar and were directed by the Justice presiding in Trial Term, Part 1 to select a jury, which they did. Some time after the selection of the jury was completed, the case was assigned to this Part for trial in the afternoon. As is customary, efforts were made to achieve a settlement of the action, which efforts continued into the following court day. After a good part of that day had been thus consumed and it became apparent that all efforts to adjust the matter were futile, the court directed the parties to proceed to trial.
At that point, and for the first time, the court was advised that both defendants were deceased and that no personal representative had been appointed for one of the defendants, to wit, Margaret Teuschler. Her attorney, engaged by an automobile liability insurance company to represent her, then made an application for an adjournment in order to procure such an appointment. The attorney for the plaintiff protested and opposed the application on the ground that he had called the office of the attorneys for the defendant to verify that they would be ready to proceed to trial, informing them that his *1055 client had to travel from Miami, Florida, to be present. He was assured that this defendant would be ready to proceed and accordingly, caused his client to travel to New York for the purpose of this trial. She appeared in court, an elderly lady using a cane, moving with obvious difficulty, ready to participate in the trial.
Nor should we ignore the attorney for defendant Edelstein, who was present throughout and had had the foresight to have an administrator appointed for his deceased client. He did not, however, oppose the application.
While the trial attorney for defendant Teuschler insisted that he had no personal knowledge that his client was deceased, he conceded that he knew this fact when he answered ready and proceeded to select a jury and that his office was aware of this condition and had remained silent even in the face of the plaintiffs inquiry. The result of such action was that the plaintiff, personally, was put to great trouble and expense and subjected to additional stress to her health; the plaintiffs attorney had spent two days in court trying for a disposition of the case, no doubt, at some expense in time and money. Similarly, the State, through the waste of its facilities, was unfairly subjected to a loss of time and money. It would have been a perversion of justice to grant unconditionally this defendant’s application upon the attorney’s bland assertion that he was not ready to proceed.
The attorney for the plaintiff pointed out to the court: "But I feel that the course of conduct that has transpired with respect to this has cost me three days of my time here, one day in preparation, one day in selecting a jury, and one day— I’ve been here all day today handling no other matters, and caused my client the upset and expense of having to disrupt her activities, and being in ill health and actually flew up here and is present right now in the courtroom, from Florida, at great personal expense and sacrifice and hardship, because she is a woman who can only get around with assistance, and the use of a cane, and someone to assist her, and I respectfully am requesting — I regularly handle Supreme Court matters; I bill $500 a day for Supreme Court work — I spent three days— I’m asking three days of my time, $1,500, and $3,000 in costs to compensate the plaintiff for her aggravation for this kind of nonsense.”
Under these circumstances the court directed that the plaintiff and her attorney be paid the sum of $1,500.
*1056 The attorneys for the defendant Teuschler oppose the plaintiff’s cross motion on the grounds that (a) the amount imposed is not authorized by the CPLR, being limited to $40 (CPLR 8202), or taxable costs (CPLR 8301); (b) his client was deceased and no verdict or decision could be rendered against her (CPLR 5016); and (c) the court did not specify that the amount be paid by the attorneys.
It should be quite clear from a reading of the full record made at the time of the application that (a) the amount imposed was not by way of costs per se, as described in the CPLR, but rather, as a condition of the granting of the application, in order to recompense the plaintiff and her attorney for their out-of-pocket loss of money and for the loss of time occasioned by the conduct of this defendant’s attorneys. The record indicates the following, as stated by the court:
"Under the circumstances, the Court finds that your office has totally neglected its obligation that it owes not only to its client, Margaret Teuschler, but it failed in its obligation that * * * it owes to all attorneys in this case; and it failed in its obligation to the Court.
"Certainly this case should not have been marked ready to proceed when indeed it was not ready. Much time has been lost. Many people have been discommoded and inconvenienced by an apparent laxity on the part of your office * * *
"In addition, this Part has been completely tied up for this day. In that regard, it has been a waste of the State’s time and money in connection with court personnel, court officers, clerks, court reporter and the Court itself. Obviously, while the Court has been addressing itself to this matter in the expectation that it would proceed to trial, it could not involve itself with any other civil matter from Part I * * *
"The Court directs that the plaintiff be reimbursed in the sum of $1,500 as and for out-of-pocket expenses incurred by reason of the actions of your office * * *
"In addition thereto, the Court also includes as part of that $1,500 a sum addressed to what could be described as punitive costs by reason of what the Court considers to be a complete and callous indifference on the part of your office with respect to the manner in which they have disregarded their obligations in making certain that before they could proceed to indicate that this case is ready for trial, that they failed to do *1057 that which was necessary to make it possible for this case to proceed to trial •* * *
"The Court directs that the sum of $1,500 is to be paid within thirty days from this date, failing which counsel for the plaintiff has leave to make a motion before this Court moving to have the answer of the defendant stricken for failure of compliance. That is the decision of the Court.” (b) There was no intention to impose any "verdict or decision” against the deceased, since, obviously, she could not be culpable in this situation; (c) the sum imposed as a condition of the granting of the application was assessed against the attorneys for the defendant Teuschler, since they were the root cause of the difficulty described.
The court must answer the question initially postulated in the affirmative: that it has the power to right wrongs, to prevent harm where danger threatens; to accord justice where injustice exists.
The situation here is analogous to that existing under the disclosure statutes wherein "the court may make such orders with regard to the failure or refusal as are just” (CPLR 3126) without placing any limit on such orders.
"That defendants may have a meritorious defense and eventually win the lawsuit affords no justification for their conduct in this proceeding. By reason of that conduct, the examinations to date have been unduly prolonged and substantially fruitless. As a further condition to relief from the penalty hereinbefore imposed, defendants shall pay to plaintiff the sum of $434 disbursements for referee and court reporter fees, a counsel fee of $500, and $20 costs of this motion. (Nomako v Ashton, 22 AD2d 683; Bennett Bros. v Floyd Bennett Farmers Market Corp., 16 AD2d 897; Di Bartolo v American & Foreign Ins. Co., 48 Misc 2d 843.)” (Warner v Bumgarner, 49 Misc 2d 488, 492; Di Bartolo v American & Foreign Ins. Co. was affd without opn 26 AD2d 992.)
Notwithstanding that which is set forth above, there is an obstacle to the granting of the cross motion at this time. It does not appear as yet, from a reading of the motion papers that an administrator has been appointed for defendant Teuschler and, therefore, it is not clear whom these attorneys are representing and for the same reason it does not appear that they can move for security for costs.
Since the attorneys for Edelstein have moved for such relief, and since they represent the administrator for their deceased *1058 client, having exhibited letters to the court, their motion is well founded.
Accordingly, the motion of the defendant Teuschler for security for costs is denied; the motion of defendant Edelstein for similar relief is granted; and the cross motion of plaintiff to strike defendants’ answer is denied, without prejudice to the renewal thereof upon the appointment of a representative of the deceased either by her attorneys or by plaintiff. At this stage, since the estate of the deceased, in effect, is not represented, it would not be appropriate to make a determination of this issue.