OPINION OF THE COURT
Edward J. McLaughlin, J.
May a court, absent legislative or plenary rule-making authority, fine an impaneled juror who abandons a trial in the midst of the proceedings? The court finds that its inherent judicial authority empowers it to do so.
THE FACTS
On March 31, 1994, the court and the attorneys for the parties conducted the voir dire in People v Boyd, indictment number 6666/93. The indictment charged serious offenses; Boyd was accused of two A-l felonies: attempting to murder *862 two police officers. During the voir dire, Ms. Diane D., a prospective juror, responded "No” to the court’s question whether there was "[a]ny reason at all why you shouldn’t serve.” Ultimately, Ms. D. was selected as alternate juror number one pursuant to CPL 270.30 and 270.35.
Ms. D. failed in her duties as a sworn juror. On April 4, 1994, after the jury was empaneled and the trial began, the court adjourned the proceedings to April 6, at 1:15 p.m. Two attorneys, four witnesses, 12 seated jurors, and one alternate juror arrived on time. Only Ms. D. did not. At 1:50 p.m., the court staff telephoned Ms. D. at her home. A relative who did not know Ms. D.’s whereabouts explained that Ms. D. did not return home the night before. After both sides consented to Ms. D.’s removal, the court resumed the proceedings at 2:01 P.M.
Ms. D. next appeared in court on April 29, 1994, in response to a court letter that directed her to do so. On that date the court appointed counsel for Ms. D., who is unemployed. Ms. D.’s attorney informed the court why Ms. D. neglected to fulfill her duties. According to her counsel, Ms. D., distraught because her father died a few months earlier, consumed so much liquor the evening before she was to return to court that she slept past the 1:15 p.m. adjournment. Ms. D.’s embarrassment, her lawyer explained, prevented her from either calling the court or returning to court once she became sober.[1]
THE LAW
This court may hold Ms. D. in contempt. As the Court of Appeals noted some time ago, "alternate jurors * * * must attend at all times upon the trial * * * and for a failure so to do are liable to be punished for contempt” (see, People v Mitchell, 266 NY 15, 17 [1934]). Nonetheless, this court is searching for a sanction less severe than contempt.[2] Neither *863 statute nor court rules provide for any explicit remedy other than a contempt finding. Lack of legislative or plenary authority, however, is not dispositive on whether a juror may be fined; the court finds that its ability to sanction a derelict juror to something less severe than contempt is derived from the court’s inherent powers.
Inherent power provides a viable reason to engage in remedial action unless the subject matter is so broad, problematic and systemic that it requires a plenary rule (see, Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d 1, 6 [1986] [Per Curiam] [finding that plenary rules are required for "frivolous litigation (, which) is (a) serious problem affecting the proper administration of justice”]). Essentially, a court may react before a relatively isolated incident becomes so pervasive as to require legislative or plenary action. Thus, when it comes to supervising errant jurors, a court is not required to choose between contempt and doing nothing.
Legislative authority, amplified by court rules, contemplates penalties only against those jurors who fail to respond to a summons for jury duty. Pursuant to the Judiciary Law, the Commissioner of Jurors may bring a proceeding against anyone who fails either to respond to a juror questionnaire or initially to appear in the jury assembly room (see, Judiciary Law § 527). These acts of noncompliance are covered pursuant to the Rules of the Chief Administrator of the Courts (see, 22 NYCRR 128.12).
Once jurors are empaneled, however, for most purposes they are no longer subject to the limited jurisdiction of the Commissioner of Jurors; rather, these jurors are subject to the court’s control. Empaneled jurors are obligated to follow the court’s instructions as to scheduling. If they fail to comply with their responsibilities, the Legislature provides a trial court with only two remedies: civil contempt or criminal contempt (see, Matter of McCormick v Axelrod, 59 NY2d 574, 582-583 [1983] [Per Curiam] [explaining difference between civil and criminal contempt generally]; People ex rel. Munsell v Court of Oyer & Terminer, 101 NY 245 [1886] [passim] [explaining difference between civil and criminal contempt in context of jurors]). A court may institute civil contempt proceedings against duly selected jurors who violate their duty to perform a judicial service (see, Judiciary Law § 753 [A] [1]). A more severe penalty, criminal contempt, is available when the juror wilfully disobeys a court’s lawful mandate (see, Judiciary Law § 750 [A] [3]).
*864 Although the Legislature has provided the courts with contempt remedies only, this court finds that its ability to sanction Ms. D. is derived from the court’s inherent powers and does not depend on legislative authorization (see, Riglander v Star Co., 98 App Div 101, 104 [1st Dept 1904], affd 181 NY 531 [1905] [mem]; Hanna v Mitchell, 202 App Div 504, 513 [1st Dept 1922] [concluding that New York Constitution expressly confers inherent judicial power on Supreme Court and that this power is "in no sense a delegation of legislative power by the Legislature”]; Tubular Prods. v Jacobson, 133 Misc 2d 807, 809 [Sup Ct, Westchester County] [noting that sanctions are permitted even when legislative authority "fails to provide for them”], affd in relevant part 138 AD2d 371, 372 [2d Dept 1986] [holding that trial court did not abuse its discretion in imposing sanction]).
That the court possesses the inherent power to control its business is indisputable — and has been recognized in New York for almost a century (see, supra; Plachte v Bancroft Inc., 3 AD2d 437, 438 [1st Dept 1957]). The issue, therefore, is whether sanctioning an offending juror falls under this inherent power, and the answer is that it does, because a court must have the independence and wherewithal to solve problems with its jury even absent specific authority to tell the court what it may or may not do. A court’s inherent jurisdiction encompasses anything reasonably necessary to control its order of business (see, Riglander v Star Co., 98 App Div, at 104, supra). Indeed, the court’s inherent powers have been described as "all powers reasonably required to enable a court to perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective” (Matter of People v Little, 89 Misc 2d 742, 745 [Yates County Ct 1977]).
Trial courts have occasionally invoked their inherent powers to impose sanctions when court proceedings are delayed. For example, in People v I. L. (143 Misc 2d 1061, 1065-1066 [Sup Ct, Bronx County 1989]), on a motion to reargue the court’s decision in People v Lacen (140 Misc 2d 64, 65 [Sup Ct, Bronx County 1988]), the court used its inherent powers to impose sanctions on the District Attorney’s office for its inexcusable failure to proceed. Similarly, in McLoughlin v Henke (130 Misc 2d 1091, 1092 [Sup Ct, Queens County 1986]), the court held that it has the inherent power to impose sanctions on an attorney whose conduct wasted the court’s time. A court may also use its inherent powers to punish those who impede *865 justice (see, e.g., Gottlieb v Edelstein, 84 Misc 2d 1053, 1054 [Sup Ct, Queens County 1975]; Campbell v Regency Towers, 76 Misc 2d 33, 35 [Sup Ct, NY County 1973]; cf., People v Vonwerne, 155 Misc 2d 311, 314-315 [Crim Ct, NY County 1992] [declining to sanction for frivolous criminal litigation, which is not explicitly covered in 22 NYCRR subpart 130-1 or subpart 130-2, because of "absence of explicit authority to impose sanctions” and because frivolous criminal litigation was commenced by a pro se defendant]).
The most practical way for a trial court to control wayward jurors, and thereby to promote efficient proceedings, is through its inherent powers, not by plenary rule; neither plenary rules nor legislative action can anticipate every event that poses challenges to the courts and their ability to conduct their business. Moreover, although a plenary rule may be the preferred solution to sanction attorneys who instigate frivolous actions (see, Matter of A. G. Ship Maintenance Corp. v Lezak, 69 NY2d, at 6, supra), or to sanction jurors who fail even to appear (see, 22 NYCRR 128.12), plenary rules are too cumbersome for jurors who disobey a court’s order.
In A. G. Ship (supra), the Court of Appeals found that frivolous litigation is a serious problem that pervades both trial and appellate courts alike (see, 69 NY2d, at 4, 6). Although the A. G. Ship Court found that proceeding by plenary rule is the best way to curb widespread frivolous actions, and this was why the Court of Appeals disapproved the common-law approach to sanctioning attorneys who litigate frivolously (see, supra, at 6), that Court has left latitude to the trial courts to impose various sanctions (see, People v Lacen, 140 Misc 2d, at 65, supra).[3]
Unlike frivolous litigation, absences and lateness on the part of selected jurors is not an epidemic or a growing problem that requires plenary-rule action of the kind required by *866 A. G. Ship (supra). Furthermore, sanctioning for frivolous litigation, which has the potential to restrict access to the court system, is a complex subject for which plenary rules are appropriate; sanctioning late or absent jurors, on the other hand, is relatively simple by comparison. Thus, this court finds that awaiting a plenary rule — assuming that one is ever adopted — is not the best way to handle the present misfeasance effectively. Instead, at least until legislation or the Chief Administrator’s Rules occupy the field, ad hoc judicial decision making is appropriate (see, People v I. L., 143 Misc 2d, at 1066, supra ["While the Legislature and the Chief Judge do have the power to regulate court practices (NY Const, art VI, § 30; Judiciary Law § 211), there is no prohibition on the exercise of that power by this court absent a court rule or statute to the contrary.”]).
Although not a widespread and acute source of angst to the court system, sworn jurors who fail to return to court at the appointed time nonetheless pose serious problems that require court action if no prejudice to the litigants results (see, e.g., People v Stansberry, — AD2d —, 1994 NY Slip Op 05262 [1st Dept, June 2, 1994] [finding that court that threatens to fine late jurors does not violate a defendant’s due process rights if otherwise-qualified jurors are not chilled from serving]). For example, the potential for harm includes calling for a mistrial when 12 jurors are unavailable to render a verdict (CPL 280.10) or, if a court improperly discharges an absent juror, sometimes a retrial after a verdict (see, People v Page, 72 NY2d 69, 73 [1988] [requiring in many circumstances delays to locate an absent juror]). A trial court, therefore, cannot sit by idly while a juror impedes the rights of the defense, the People, the court, the witnesses, and even, or perhaps especially, the other jurors.
Accordingly, rather than hold her in contempt, the court fines Ms. D. $100. The entire amount must be paid within 30 days from today to the County Clerk, New York County, for transmittal to the State Commissioner of Taxation and Finance (cf., 22 NYCRR 130-1.3) (dealing with payment of sanctions by nonattorneys).

. Ms. D. did not testify or speak at the proceeding, and the court does not fully credit her explanation.

. See, e.g., People ex rel. Nunns v County Ct. (188 App Div 424, 451 [2d Dept 1919] [Putnam, J., dissenting] [" 'It seems * * * that this jurisdiction of committing (jurors) for contempt * * * should be most jealously * * * exercised * * * with the greatest reluctance and the greatest anxiety on the part of judges to see whether there is no other mode * * * which can be brought to bear on the subject.’ ”], quoting Matter of Clements, 46 LJ C Div [N.S.] 375, 383 [Jessel, J.]); see also, Goodman v Liebovitz (96 Misc 2d 1059 [Sup Ct, NY County 1978], reconsidered 103 Misc 2d 332, affd 73 AD2d 855 [1st Dept 1980] [declining to hold respondent, a prospective grand juror, in contempt for testing invasive fingerprinting procedure]).

. Gabrelian v Gabrelian (108 AD2d 445 [2d Dept 1985]) and Ltown Ltd. Partnership v Sire Plan (108 AD2d 435 [2d Dept 1985]) also contain thorough discussions of a court’s inherent power to impose sanctions. The decision in Gabrelian was overruled by A. G. Ship (supra), and relying on the reasoning in A. G. Ship the Court of Appeals modified in pertinent part the Appellate Division’s order in Ltown (see, 69 NY2d 670, 672 [1986] [mem]). Although the Second Department in Gabrelian and Ltown appears to have decided incorrectly that a court may sanction attorneys absent a plenary rule that would permit a court to do so, the Second Department’s reasoning in those two cases regarding a court’s inherent power to sanction in appropriate circumstances — in this case a juror who absconded in the middle of a trial— is still persuasive.