OPINION OF THE COURT
Edward H. Lehner, J.
At issue on this motion for a preliminary injunction and class certification is the constitutionality of the recent amendments of RPAPL 745 (2) and 747-a contained in chapter 116 of the Laws of 1997. Each individually named plaintiff in the amended complaint asserts that he or she is at risk of wrongful eviction based on the allegedly unconstitutional laws. In addition, four organizations which promote tenants’ rights are plaintiffs.
Named as defendants are the Governor of the State of New York (George Pataki), the State itself, the Chief Administrative Judge of the Courts of the State of New York (Jonathan Lippman), the Administrative Judge of the Civil Court of the City of New York (Fern Fisher-Brandveen) (“on behalf of all Judges assigned to the Housing Part of the Civil Court of the City of New York”) (the Housing Court), the Chief Clerk of the Civil Court (Jack Baer), the First Deputy Chief Clerk of the Civil Court (Ernesto Belzaguy) (“on behalf of all Clerks” of the Housing Court), the Housing Court itself, and RHQ Associates (the landlord of plaintiff Dainetta Lang). The various individual Civil Court and Housing Court Judges are not named in the action and the attorneys representing the named Administrative Judges and clerks specifically assert that they do not represent any unnamed Judge or clerk.
On December 2, 1997 plaintiffs brought this motion, via order to show cause, for a preliminary injunction to enjoin implementation of RPAPL 745 (2) and 747-a as violative of the *679 due process and equal protection guarantees of the State and Federal Constitutions and the separation of powers doctrine. Plaintiffs move for certification of a plaintiff class consisting of all persons living as tenants in residential housing in New York City and for the certification of two defendant classes, to wit: all Judges and all clerks assigned to the Housing Court.
Following an oral argument on December 2, 1997, Justice Emily Jane Goodman signed the order to show cause and issued a temporary restraining order (TRO) enjoining, pending the hearing of the motion, the defendants from implementing and applying RPAPL 745 (2) and 747-a with respect to the named plaintiffs and “all others similarly situated”. The action, which had originally been assigned to me under the random assignment process, was later transferred back to me by Administrative Judge Stephen Crane who determined that plaintiffs’ representation to the Clerk that this action was related to one pending before Justice Goodman and thus required transfer to her was not well founded.
By order to show cause dated December 15, 1997, the Rent Stabilization Association and several building owners moved to intervene as defendants, which motion was granted at oral argument without opposition. Also, on the day prior to the oral argument held on December 19, 1997, the complaint was amended to add five individuals as party plaintiffs.
The parties agreed that the TRO expired by its terms on the date of the oral argument. At the conclusion of the argument, I denied the request by plaintiffs for a stay of the eviction of the individual tenants, without prejudice to the right to seek such relief in the Housing Court where their proceedings were pending. All parties agreed that a determination of unconstitutionality could be made by any Judge assigned to the Housing Court.
At oral argument I further suggested several times that the preferable route to be taken to obtain a prompt and effective adjudication of the challenge to constitutionality argued before me was by raising the issue before the Housing Court, the determination of which would be reviewable by the appropriate Appellate Term, whose determination would be binding on all Civil Court and Housing Court Judges of the judicial department. Instead, in this action plaintiffs seek to have me certify as a class “all persons living in residential housing in New York City who have been or may be sued in a summary proceeding”, which, in effect, means every tenant living in the City, which relief if granted would require some form of notice *680 and an opportunity for any tenant to opt-out. The request for class certification of all Judges and clerks assigned to the Housing Court is with the goal of binding all such Judges by the determination rendered herein. The motion papers do not seek to join any landlord other than named defendant RHQ Associates.
As of the time of argument no answer had been served by any defendant. Several days after argument it was suggested to the parties that, even though issue had not been joined, they stipulate to having me treat the motion as one for summary judgment. However, plaintiffs and other parties objected on various grounds and since appropriate notice had not been given prior to submission, consideration of the motion on the basis of CPLR 3211 (c) was not appropriate. Accordingly, the motion is being treated, as argued, as solely for a preliminary injunction, for which relief plaintiffs must demonstrate the traditional requirements of "a probability of success, danger of irreparable injury in the absence of an injunction, and a balance of the equities in their favor” (Aetna Ins. Co. v Capasso, 75 NY2d 860, 862 [1990]).
Under this criteria, no preliminary injunction can issue on the motion before me because plaintiffs cannot demonstrate that irreparable harm would ensue from a denial of the motion. I come to this conclusion because in the Housing Court, the preferable forum for the resolution of landlord/tenant disputes (Post v 120 E. End Ave. Corp., 62 NY2d 19 [1984]), any plaintiff herein would have the opportunity to challenge the statutes attacked as being unconstitutional, and the Judge before whom that argument is made would have the obligation to determine that contention before passing upon the landlord’s application for a deposit or eviction. Notwithstanding this conclusion, considering the voluminous submissions on this application, I have analyzed the constitutional contentions under the belief that there may shortly be before me a motion for summary judgment on the cause of action for a declaratory judgment on constitutionality.
As a result of the 1997 amendment, subdivision (2) of RPAPL 745 now provides, in part, that in the City of New York:
“(a) In a summary proceeding upon the second of two adjournments at the request of the respondent, or, upon the thirtieth day after the first appearance of the parties in court less any days that the proceeding has been adjourned upon the request of the petitioner, whichever occurs sooner, the court shall direct that the respondent, upon an application by the *681 petitioner, deposit with the court within five days sums of rent or use and occupancy accrued from the date the petition and notice of petition are served upon the respondent, and all sums as they become due for rent and use and occupancy[*] * * *
“When the rental unit that is the subject of the petition is located in a building containing twelve or fewer units, the court shall inquire of the respondent as to whether there is any undisputed amount of the rent or use and occupancy due to the petitioner. Any such undisputed amount shall be paid directly to the petitioner, and any disputed amount shall be deposited to the court by the respondent as provided in this subdivision.”
Paragraph (b) of the same subdivision then limits the amount of rent to be deposited to the extent that the court “shall not require” a tenant to deposit that portion of the rent or use and occupancy which is: payable by direct government housing subsidy; a senior citizen rent increase exemption; a Social Services direct payment or two-party check; a shelter allowance; or two thirds of a monthly Supplemental Security Income payment.
Pursuant to paragraph (c) (i) of said subdivision, if the payment is not made as directed, the court shall dismiss (upon an application by the landlord) the tenant’s defenses and counterclaims without prejudice and grant judgment for the landlord unless the tenant interposes the defense of payment and shows that the amount required to be deposited has previously been paid to the landlord. Under paragraph (c) (ii), if a tenant makes the required deposit but thereafter fails to continue to deposit all rent or use and occupancy that “may become due up to the time of the entry of judgment”, the court shall, upon an application of the landlord, order an immediate trial of the issues raised in the tenant’s answer. An “immediate trial” shall mean: “that no further adjournments of the proceeding without petitioner consent shall be granted, the case shall be assigned by the administrative judge to a trial ready part and such trial shall commence and continue day to day until completed. There shall be no stay granted of such trial without an order to re *682 spondent to pay rent or use and occupancy due pursuant to this subdivision and rent or use and occupancy as it becomes due.” (RPAPL 745 [2] [c] [ii].) Further, under other provisions of the paragraph, the court cannot extend the time for deposits without the consent of the landlord or waive the deposit requirement (RPAPL 745 [2] [c] [iii], [v]). Finally, RPAPL 745 (2) (e) provides: “The provisions of this subdivision shall not be construed as to deprive a respondent of a trial of any defenses or counterclaims in a separate action if such defenses or counterclaims are dismissed without prejudice.”
Plaintiffs argue that RPAPL 745 (2) deprives tenants of a property interest in violation of due process because its restrictions on tenant requested adjournments, absent a deposit, denies tenants the time necessary to be heard “at a meaningful time and in a meaningful manner” (plaintiffs’ brief, at 24), contending that a tenant may be denied adjournments needed to prepare for trial and may be penalized for delays caused by the court considering a pretrial motion. Plaintiffs also claim that the provisions violate due process by depriving a tenant of the right to a hearing on defenses before payment.
Defendants counter that the tenant’s due process rights are protected by the fact that the statute provides for a trial, albeit immediate, and allows a tenant to pursue dismissed defenses and counterclaims in a separate proceeding. Also, it is asserted that there is no violation of due process in requiring a deposit because the tenant is contractually responsible for rent and to the extent that there is a claimed rent overcharge or violation of the warranty of habitability, the tenant will receive the money back at the conclusion of the litigation.
“There is a simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt * * *
“There is also * * * a further presumption * * * that the Legislature has investigated and found facts necessary to support the legislation * * * as well as the existence of a situation showing or indicating its need or desirability” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370 [1978]).
As acknowledged by plaintiffs, “[t]he governmental justification for RPAPL §745(2) was to prevent abuse of the Housing Court process and to ensure that petitioners who obtain judgments will be able to collect them” (plaintiffs’ brief, at 68; see also, Yellen v Baez, NYLJ, Dec. 17, 1997, at 26, col 2 [Civ Ct, Richmond County] [where it was stated that “legislature’s *683 intent was to end what was perceived to be an abuse of the summary proceeding process whereby tenants were granted multiple adjournments for varying reasons while rent continued to accrue and the tenant had absolutely no financial ability to satisfy a judgment should the landlord prevail in the action”]).
It is agreed that a leasehold interest is a species of property protected by the Due Process Clause of the State and Federal Constitutions and that due process demands that an opportunity to be heard “at a meaningful time and in a meaningful manner” be provided (Armstrong v Manzo, 380 US 545, 552 [1965]).
Consideration of the constitutionality of the challenged statutory provisions must begin with an analysis of the Supreme Court decision in Lindsey v Normet (405 US 56 [1972]), where the Court examined an Oregon statute which was in many respects similar to the provisions at issue here. There the Oregon Forcible Entry and Wrongful Detainer (FED) statute provided that a trial on a landlord’s action for possession must be held between two and four days after service of a summons, allowing the court discretion to grant a single two-day adjournment. Any additional continuance was conditioned upon the tenant posting security for the payment of any rent that might accrue during the period of the continuance. The statute further limited the defenses that could be asserted, with it argued that the statute precluded “consideration of defenses based on the landlord’s breach of a duty to maintain the premises” (at 64).
In analyzing the tenants’ due process challenge to the expedited hearing, the Supreme Court, per Justice White, concluded that (supra, at 64-65): “We are unable to conclude that either the early-trial provision or the limitation on litigable issues is invalid on its face under the Due Process Clause of the Fourteenth Amendment. In those recurring cases where the tenant fails to pay rent or holds over after expiration of his tenancy and the issue in the ensuing litigation is simply whether he has paid or held over, we cannot declare that the Oregon statute allows an unduly short time for trial preparation.”
As for the requirement of posting a deposit, the Court said (supra, at 65): “The provision for continuance of the action if the tenant posts security for accruing rent means that in cases where tenant defendants, unlike appellants, deny nonpayment of rent and may require more time to prepare for litigation, *684 they will not be forced to trial if they provide for rent payments in the interim. A requirement that the tenant pay or provide for the payment of rent during the continuance of the action is hardly irrational or oppressive * * * Of course, it is possible for this provision to be applied so as to deprive a tenant of a proper hearing in specific situations, but there is no such showing made here, and possible infirmity in other situations does not render it invalid on its face.” (Emphasis supplied.)
In rejecting the challenge to the statute on due process grounds based on the limitation of the defenses that the tenant may raise in contesting the landlord’s action for possession, the Court wrote (supra, at 65-68):
“Nor does Oregon deny due process of law by restricting the issues in FED actions to whether the tenant has paid rent and honored the covenants he has assumed, issues that may be fairly and fully litigated under the Oregon procedure * * *
“ ‘Due process requires that there be an opportunity to present every available defense’ * * * Appellants do not deny, however, that there are available procedures to litigate any claims against the landlord cognizable in Oregon. Their claim is that they are denied due process of law because the rental payments are not suspended while the alleged wrongdoings of the landlord are litigated. We see no constitutional barrier to Oregon’s insistence that the tenant provide for accruing rent pending judicial settlement of his disputes with the lessor * * *
“Underlying appellants’ claim is the assumption that they are denied due process of law unless Oregon recognizes the failure of the landlord to maintain the premises as an operative defense to the possessory FED action and as an adequate excuse for nonpayment of rent. The Constitution has not federalized the substantive law of landlord-tenant relations, however, and we see nothing to forbid Oregon from treating the undertakings of the tenant and those of the landlord as independent rather than dependent covenants.”
In upholding the statute against a claim of lack of equal protection, it was stated (supra, at 70-71): “The statute potentially applies to all tenants, rich and poor, commercial and noncommercial; it cannot be faulted for over-exclusiveness or under-exclusiveness * * * It is readily apparent that prompt as well as peaceful resolution of disputes over the right to possession of real property is the end sought by the Oregon statute. It is also clear that the provisions for early trial and simplification of issues are closely related to that purpose. The *685 equal protection claim with respect to these provisions thus depends on whether the State may validly single out possessory disputes between landlord and tenant for especially prompt judicial settlement. In making such an inquiry a State is ‘presumed to have acted within [its] constitutional power despite the fact that, in practice, [its] laws result in some inequality.’ ”
Applying these binding legal principles here, the deposit requirement and the expedited schedule for adjudication contained within RPAPL 745 (2) do not violate due process guarantees. As the time periods set forth in the Oregon statute are significantly shorter than those provided under New York law, there is no basis for finding the New York time restrictions insufficient per se. Moreover, the requirement of a deposit to procure additional adjournments is specifically approved by the Lindsey decision (supra).
Plaintiffs assert that Lindsey (supra) is not decisive here because in New York State, unlike in Oregon, the warranty of habitability (by virtue of the enactment of Real Property Law § 235-b) is implied in every residential lease and is an interdependent covenant with the obligation to pay rent and is breached if, “in the eyes of a reasonable person, defects in the dwelling deprive the tenant of those essential functions which a residence is expected to provide” (Park W. Mgt. Corp. v Mitchell, 47 NY2d 316, 328 [1979], cert denied 444 US 992 [1979]). Plaintiffs argue that, having made a tenant’s liability for rent conditional on the landlord’s compliance with the warranty of habitability, the State may not deny a tenant a hearing on a breach of warranty claim before determining the tenant’s liability for rent, relying upon the Supreme Court decision of Bell v Burson (402 US 535, 541 [1971]). In that case a Georgia statute provided that the motor vehicle registration and driver’s license of an uninsured motorist involved in an accident shall be suspended unless the driver posts security to cover the amount of damages claimed by aggrieved parties in the accident report. The bond was required prior to any hearing on the issue of liability. The Supreme Court determined (at 541): “And looking to the operation of the State’s statutory scheme, it is clear that liability, in the sense of an ultimate judicial determination of responsibility, plays a crucial role in the * * * Act. If prior to suspension there is a release from liability executed by the injured party, no suspension is worked by the Act * * * The same is true if prior to suspension there is an adjudication of nonliability * * * Even after suspension *686 has been declared, a release from liability or an adjudication of nonliability will lift the suspension * * * Moreover, other of the Act’s exceptions are developed around liability-related concepts * * * Since the statutory scheme makes liability an important factor in the State’s determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing.”
There is a distinction, however, between the process reviewed in Bell (supra) and the statutory procedures involved here. In Bell, there was absolutely no opportunity to assert a viable defense unless a bond was posted. In contrast, under RPAPL 745 (2) a tenant may raise a warranty of habitability defense and receive a prompt hearing on the issue. It is only in seeking to adjourn the trial is a deposit required of postpetition rent, a situation which the Supreme Court in Lindsey (405 US 56, supra) held was appropriate.
- Further, to the limited extent that the 1997 amendments may affect the ability of a tenant to assert a breach of the warranty of habitability as a defense in a summary proceeding, such modification, as indicated in Lindsey (supra), does not rise to a constitutional deprivation. As noted by Justice Douglas in his dissent in Lindsey, Oregon had abolished the concept that the covenant to pay rent was independent of the covenant to provide services, and “treats a lease as a contract” (at 87, citing Eggen v Wetterborg, 193 Ore 145, 153, 237 P2d 970, 974 [1951] [“The rules applicable to the construction of written contracts in general are to be applied in construing a written lease”]; Wright v Bauman, 239 Ore 410, 414, 398 P2d 119, 121 [1965] [quoting from McCormick on Damages, “ ‘the realities of feudal tenure have vanished and a new system based upon a theory of contractual obligations has in general taken its place’ ”]). Justice Douglas then concluded that since Oregon holds that a lease is a contract, “all defenses relevant to its legality and its actual operation would seem to be within the ambit of the opportunity to be heard that is embraced within the concept of due process” (at 88-89).
Thus, in Lindsey (supra), the Supreme Court clearly had before it and rejected a challenge to constitutionality of a statute that deprived one party to a lease of an opportunity to assert claims of breach in an action for possession. There it appears that the subject statute had the effect of limiting the contract concept of a lease which Oregon had previously adopted and, in a sense, reinstituted the concept that the *687 obligation to pay rent is independent of the landlord’s leasehold obligations. The same can be said, to a very limited extent, of the act of our Legislature in enacting the challenged statutes.
To the extent that it is asserted that the provision violates due process as applied to the individual plaintiffs, that contention may appropriately be presented to the Housing Court where the individual underlying landlord/tenant actions are pending. (See, e.g., Yellen v Baez, NYLJ, Dec. 17, 1997, at 26, col 2, supra; Targee Mgt. v Jones, NYLJ, Nov. 24, 1997, at 36, col 1 [Civ Ct, Richmond County].) As reiterated in Lindsey (supra), a statute valid on its face may well be unconstitutional in its application.
Plaintiffs next assert that RPAPL 745 (2) violates the Equal Protection Clause because it treats tenants who can be promptly prepared for trial significantly differently from those who cannot, and because tenants in cases where either party makes a motion (resulting in a delay awaiting court decision) may be penalized by a deposit requirement. Further, plaintiffs assert that the section treats tenants and landlords differently as landlords defending against counterclaims do not need to deposit money to obtain an adjournment. Again relying on Lindsey (supra), defendants argue that the Supreme Court has already determined that the deposit, expedited procedures and treatment of landlords and tenants under the relevant provisions do not violate equal protection and are rationally related to the legislative purpose of the statute.
The Equal Protection Clause of the US Constitution, Fourteenth Amendment, § 1 commands that no State shall “deny to any person within its jurisdiction the equal protection of the laws”. It has been held that the similar New York State constitutional provision (NY Const, art I, § 11) “ ‘is no more broad in coverage than its Federal prototype’ ” (Matter of Esler v Walters, 56 NY2d 306, 313-314 [1982]). The concept of equal protection “is essentially a direction that all persons similarly situated should be treated alike” (Cleburne v Cleburne Living Ctr., 473 US 432, 439 [1985]).
The parties agree that this equal protection challenge must be analyzed under the rational basis test. Importantly, in “the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some ‘reasonable basis,’ it does not offend the Constitution simply because the classification ‘is not made with mathematical nicety or because in practice it results in some inequality.’ ” *688 (Dandridge v Williams, 397 US 471, 485 [1970]; see also, Montgomery v Daniels, 38 NY2d 41, 61 [1975].) Under the rational basis standard, the “general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest * * * When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude * * * and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.” (Cleburne v Cleburne Living Ctr., supra, at 440.)
In terms of different statutory requirements concerning landlords verses tenants, the Lindsey Court held that because of the “unique factual and legal characteristics of the landlord-tenant relationship” tenants may be constitutionally subjected to different standards, stating (405 US 56, 72-73, supra): “The tenant is, by definition, in possession of the property of the landlord; unless a judicially supervised mechanism is provided for what would otherwise be swift repossession by the landlord himself, the tenant would be able to deny the landlord the rights of income incident to ownership by refusing to pay rent and by preventing sale or rental to someone else. Many expenses of the landlord continue to accrue whether a tenant pays his rent or not. Speedy adjudication is desirable to prevent subjecting the landlord to undeserved economic loss and the tenant to unmerited harassment and dispossession when his lease * * * gives him the right to peaceful and undisturbed possession of the property. Holding over by the tenant beyond the term of his agreement or holding without payment of rent has proved a virulent source of friction and dispute. We think Oregon was well within its constitutional powers in providing for rapid and peaceful settlement of these disputes.” Accordingly, the provisions here, which are so similar to those in Lindsey, cannot be said to violate the Equal Protection Clause.
Next plaintiffs argue that RPAPL 745 (2) is unconstitutional because it violates the separation of powers between the legislative and judicial branches by impinging on the inherent power of the judiciary to control court proceedings and to adjudicate controversies on the merits. In opposition, defendants note that section 30 of article VI of the New York Constitution grants the Legislature the power to regulate the court’s powers and procedures and the Legislature has broad regulatory control over the Civil Court as it was created by the Legislature pursuant to guidelines set forth in the Constitution (art VI, § 15). CPLR 2201 is also cited as evidence of the Legislature’s power to restrict the use of stays.
*689 Article VI, § 1 of the New York Constitution, vests the judicial authority of the State in a unified court system. Legislative power is vested in the State Senate and Assembly pursuant to article III, § 1. This constitutional structure is founded on the concept that each branch may not interfere with the discharge of the inherent functions of the other. “ ‘The object of a written Constitution is to regulate, define and limit the powers of government by assigning to the executive, legislative and judicial branches distinct and independent powers. The safety of free government rests upon the independence of each branch and the even balance of power between the three * * * It is not merely for convenience in the transaction of business that they are kept separate by the Constitution, but for the preservation of liberty itself ” (New York State Bankers Assn, v Wetzler, 81 NY2d 98, 105 [1993], quoting People ex rel. Burby v Howland, 155 NY 270, 282 [1898]).
“ ‘It is a fundamental principle of the organic law that each department should be free from interference, in the discharge of its peculiar duties, by either of the others’ ” (People ex rel. Burby v Howland, supra, at 282, quoted in People v Ohrenstein, 153 AD2d 342, 359 [1st Dept 1989]). “The courts are not the puppets of the Legislature. They are an independent branch of the government, as necessary and powerful in their sphere as either of the other great divisions” (Riglander v Star Co., 98 App Div 101, 105 [1st Dept 1904], affd 181 NY 531 [1905]; see also, Cohn v Borchard Affiliations, 25 NY2d 237 [1969]; Matter of People v Little, 89 Misc 2d 742, 745 [Sup Ct, Yates County 1977]). Courts are vested with the inherent power “to do all things reasonably necessary for the administration of justice within the scope of their jurisdiction” (Gabrelian v Gabrelian, 108 AD2d 445, 448 [2d Dept 1985], appeal dismissed 66 NY2d 741 [1985]). “[U]nder the ‘inherent powers doctrine’, this Court is vested with all powers reasonably required to enable it to: ‘ “perform efficiently its judicial functions, to protect its dignity, independence and integrity, and to make its lawful actions effective. * * * Inherent judicial powers derive not from legislative grant or specific constitutional provision, but from the fact it is a court * * * and to be a court requires certain incidental powers” ’ ” (Wehringer v Brannigan, 232 AD2d 206, 207 [1st Dept 1996], appeal dismissed 89 NY2d 980 [1997]; see also, Langan v First Trust & Deposit Co., 270 App Div 700 [4th Dept 1946], affd 296 NY 1014 [1947]; People v Michael M., 162 Misc 2d 803 [Sup Ct, Kings County 1994]; Matter of Diane D., 161 Misc 2d 861 [Sup Ct, NY County 1994]).
*690 A fundamental element of inherent judicial power is the authority to control the court’s calendar exercised through the discretion to stay proceedings (Landis v North Am. Co., 299 US 248, 254 [1936] [“the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants”]; see generally, Bankers Trust Co. v Broten, 101 Misc 2d 227 [Sup Ct, NY County 1979]; Matter of Grisi v Shainswit, 119 AD2d 418, 421 [1st Dept 1986]; Headley v Noto, 22 NY2d 1, 4 [1968]; Plachte v Bancroft, Inc., 3 AD2d 437 [1st Dept 1957]). “The granting of a continuance is an exercise of judicial discretion upon particular facts, with appropriate opportunity for counsel to be heard, and is exclusively a judicial act * * * As a general rule the granting or refusing of a continuance is within the sound discretion of the trial court, and in the absence of an abuse of discretion, will be upheld on appellate review * * * A Trial Judge observes the case and knows the surrounding facts and circumstances; hence, he is in a better position than an appellate court (and for that matter an Administrative Judge, a nonjudicial officer, or a computer) to determine whether the design of a party making a motion for a continuance is delay, or whether a continuance is essential to the interests of justice” (Balogh v H.R.B. Caterers, 88 AD2d.l36, 143 [2d Dept 1982]).
While the Legislature’s direction to require deposits as a condition for the delay of a trial does not interfere with inhere ent powers of a court, the “immediate trial” provision of paragraph (c) (ii) appears to violate the separation of powers doctrine. That provision mandates the scheduling of an immediate trial which must proceed day to day until completed in the event that a tenant, who has initially complied with a rent deposit order, fails to make a subsequent deposit. If literally read, such mandate deprives a court of the authority under any circumstances, including illness or calendar congestion, to adjourn or stay the matter and thus strips the court of its ability to utilize its inherent power to control its calendar to serve the interests of justice.
This conclusion is in accordance with Riglander v Star Co. (supra), where an amendment to the former Code of Civil Procedure, which specified when certain cases were to be set down for trial, was struck down as an unconstitutional deprivation of the right of courts to exercise inherent judicial discretion. (See also, Plachte v Bancroft, Inc., supra, at 438 [“a statute which would impose a mandate upon the court in the otherwise *691 discretionary handling of time of trial is unconstitutional”]; Sliosberg v New York Life Ins. Co., 217 App Div 67 [1st Dept 1926], affd 244 NY 482 [1927], 244 NY 599 [1927].)
Also at issue here is RPAPL 747-a which provides that, after a tenant appears, a judgment is issued and five days have elapsed, the court “shall not grant a stay of the issuance or execution of any warrant of eviction nor stay the re-letting of the premises” unless the tenant can demonstrate the judgment amount was paid prior to the execution of the warrant or deposited with the court.
Initially, it is noted that the restrictions contained in this section only apply to a tenant who has appeared in the proceeding and that RPAPL 749 (3), which allows a court to vacate a warrant “for good cause shown prior to the execution thereof’, would allow a tenant who defaulted in appearing in the proceeding and claims a lack of jurisdiction to have the warrant vacated without making a deposit.
I believe that while the statute is constitutional on its face, it may as applied be unconstitutional. For example, if a tenant fails to appear for trial because of illness and a default judgment ensues, or if a judgment is entered improperly pursuant to a stipulation which the tenant claims has not been violated, or if there is a delay in obtaining money due the tenant from Social Services, it may well be unconstitutional to prohibit a court (which finds good cause) from vacating the warrant without mandating a deposit.
As for the request for class certification of a plaintiff class of all tenants in residential housing in New York City and defendant classes of all Judges and all clerks assigned to the Housing Court, it is denied. Plaintiffs seek to bind all tenants in the City of New York to the determination made in this action. If the proposed result were adopted, it would mean that a tenant appearing in Housing Court (who did not opt-out of the class) would not be permitted to challenge the constitutionality of any aspect of the statute which was upheld in this decision. Furthermore, it should be noted that while movants do not seek a class certification of the landlords of New York City, they seek by the classifications and injunctions applied for herein to deny these property owners of the right to challenge the conclusions reached herein.
As for the proposed class of Judges, at this time no individual Judge, except Administrative Judges, are parties to the action and the attorney for the court defendants denied representing any individual Civil Court or Housing Court *692 Judge. Plaintiffs’ argument that the Administrative Judges have the authority to dictate how Civil Court and Housing Court Judges must rule on a challenge to the constitutionality of these laws through an administrative order is totally lacking in merit. The Administrative Judges themselves acknowledge that such action would be beyond their authority. Furthermore, the First Department stated in Balogh v H.R.B. Caterers (supra, at 143-144) that: “there is no provision contained in any such law which expressly or impliedly permits the delegation to an Administrative Judge of the power to supersede, overrule, control or aid a Trial Judge in carrying out his adjudicative responsibilities. Delegation of administrative powers to a Judge is limited and does not increase the judicial power or authority of such Administrative Judge as to give him authority to overrule decisions made by other Judges in cases properly assigned to them, or to make the decisions for such other Judges”.
Moreover, even if the Administrative Judges possessed the power that plaintiffs claim, it would not be appropriate for this court to enjoin colleagues from reaching their own conclusions as to the constitutionality of the relevant provisions. To the extent that plaintiffs assert that the denial of their motion will résult in an injustice because there may be numerous, possibly contradictory, decisions on the same constitutional issues, the procreation of various opinions and methods of legal analysis concerning a controversial legal issue is fundamental to the development of law through legal jurisprudence.
Accordingly, plaintiffs’ motion for a preliminary injunction and class certification is denied.

 RPAPL 745 (2) contains additional new language expressly defining the circumstances when a deposit will not be required, i.e., if the tenant “can establish, at an immediate hearing, to the satisfaction of the court that respondent has properly interposed one of the following defenses or established the following grounds:” (1) Petitioner is not a proper party entitled to maintain the proceeding pursuant to RPAPL 721; (2) Actual eviction, actual partial eviction or constructive eviction, and tenant has quit the premises; (3) A defense pursuant to section 143-b of the Social Services Law; or (4) Lack of jurisdiction.